Wright, J.,
delivered the opinion of the court:
If/is not necessary to recapitulate the evidence in this case. It satisfies us that Heath and Littler were jointly concerned in the drove of cattle purchased, and that, the money was borrowed at •the bank on their joint responsibility, and for their joint use and 'benefit, and also that the superior credit and responsibility of Littler was the security most relied upon by the indorsers in lending *323 their names to the paper. That Iieath was the active partner, made the purchases, procured the indorsements, some upon blanks, with the assurance that all the names were to be to the notes, and that Littler himself, after he found his name was left off the note, complained that Heath was acting the rascal in leaving his name off with intent to cheat him out of his share of the proceeds of the cattle. That the renewals of the note in bank were in order to conform to the course of business in the bank, *but was in fact, and so understood by all the parties,- only a continuance of the original loan to the partnership. That the complainant, as security for Heath and Littler, has been compelled to pay money, .and that Heath, the survivor, has absconded to parts without the state, and is wholly insolvent.
Upon this state of the case, no good objection to the complainant’s coming upon the estate of Littler is perceived. It is urged that he is bound to pursue the surviving partner, and prosecute at law, to insolvency. We know of no rule in equity winch requires •of a' security the pursuit of claim upon the partnership against •the survivor to judgment, when that survivor is insolvent, has absconded from the country, and it is evident such pursuit would be fruitless. The complainant became bound for Littler as well as Heath, and has been compelled, in consequence, to pay money. Both were equally liable to him, and at law, as well as on the plainest principles of justice, he has a right to proceed against both until made whole, and to recover from either or both. Where ■one of several who are jointly liable dies, leaving a solvent survivor, for good reason the law requires the pursuit of the survivor before you resort to the estate of the deceased; but the insolvency of the survivor, in our opinion, would exonerate the security from such pursuit, for the simple reason that the sole object and end of such pursuit, the obtaining satisfaction, is put beyond attainment by the insolvency; and neither law nor equity requires a vain thing. This would hold even if the survivor were within the jurisdiction of the court, and could be reached and coerced by legal process; and by much stronger and more equitable reasons shall the security be held discharged from the pursuit of an insolvent partner into another jurisdiction, when there.is a solvent estate of the deceased partner within the jurisdiction that can be reached. Justice would seem to require of those representing the estate of .the deceased partner in such cases, to apply the effects of the de *324 ceased, which may have been increased by the very money which' the security has been compelled to advance, to make the security whole, and themselves encounter the trouble and expense of pursuit after the copartner liable to contribution. Those having the-benefit should first meet the responsibility, and take the chance of recovery from *those participating with thorn, and not throw both upon one having no benefit, and who merely lent his-name to oblige the deceased, as well as the survivor. We think, that a security, in such a case, may charge an intestate estate in. this court.
But it is said the partnership between Littler and Heath was-limited, and was dissolved, and that the complainant knowing the dissolution, became security for'Heath alone. The partnership-was, indeed, limited in its subjects, the dealing in cattle and the-procuring the means of attaining stock, but as to those subjects it had all the incidents of a general partnership. If dissolved, that fact must have been known to the respondents, and they are-bound to prove it. There is not only no evidence of that fact, but there is, on the contrary, the declaration of Littler in effect, that, it was not dissolved, and that his name had been left off the note-by his own partner with intent to defraud him ! The fact of dissolution, and the proof of notice of it to the complainant, are very different things. If the dissolution were known, then resort might be had to circumstances to establish a knowledge of it in the complainant ; but it is not admissible for Littler’s representatives, against the declarations of their intestate, wholly to omit proof of' the principal facts, and deduce it from the act of the copartner in-having a separate note, and of the complainant in indorsing it, when the intestate proclaims the act of his partner to have been done in fraud of his own rights, and the proof and circumstances-show, either that the complainant did not notice the change, or,, having noticed it,.was lulled to quiet by the assurance of Heath that all were to sign. If, as claimed, this was a limited partnership, and was dissolved, would that put an end to the joint validity of the partner for their partnership debts. The fact of notice would not affect the question. No new debt was created at bank. The old one remained outstanding, although, to conform to the custom of business in the bank, when continued and further time was given, the evidence of the debt was, from time to time, changed. This was perfectly understood by all the parties. No- *325 •one ever, in fact, paid the debt but the complainant. Though partnerships may be terminated, either by limitation of time or. *the completion of the business which was its subject, yet .as to partnership responsibilities they continue until all are discharged. The proposition of the respondent would be a great convenience to debtors, as it would put it in their own power, without the consent of creditors, to discharge their obligations by a mere dissolution of partnership. But this partnership, on the evidence, continued more than a year. The loan was obtained in April, 1818, and the last note for it was discounted in July, 1819, but a short time over a year; and if the question were one to be affected by dissolution, or expiration of time, proof would be required of the allegations relied on. The assumption is not well founded in the case, that the complainant consented to a change of the paper, ■knowing the partnership at an end, and thus gave credit to Heath :alone, and discharged Littler. There is no evidence that such was the case, but there is evidence to the contrary. When the identity ■ of the debt is ascertained, it is now settled that a new change of the evidence of it will not affect the liability of the real parties, in .a court of chancery.
Upon the whole, this case, stripped of technicalities and words, is a very simple one. Horsey became security for Heath and Littler, and had to pay the money for them; Heath being insolvent, has run away; Littler is dead, but has left a solvent estate; and Horsey now asks to have his claim admitted as a valid one upon the estate of Littler. It appears to us a clear ease for relief against Littler. But, inasmuch as we are not fully advised of all the facts necessary to a final decree, we refer the case to a master, with directions to take and state:
1. The account paid by the complainant, on account of the loan of the bank, with interest up to the first day of the next term.
2. The time when the administrator of Littler had notice of the complainant’s claims.
3. The value of the assets, real and personal, of the intestate, which have or may come into the hands of the administrator.
*1. The claims upon these assets, showing in distinct items those by law preferred to creditors.
5. The amount of disbursements made by the administrator, ■•and the time each was made.