**WYSE LABORATORIES, INC., Bankrupt; In Re.**

IN THE DISTRICT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF OHIO WESTERN DIVISION

No. 9452.    Decided July 14, 1949.

John B. Harshman, Joseph L. Lair, Dayton, for the Maxwell
Finance Company and Jack Pickrel.
Thomas Talbot, Dayton, for the trustee in bankruptcy.

**322**

## OPINION OF REFEREE

By HERRMAN, Referee.

At Dayton, in said District, on the 14th day of July, 1949. This matter comes before the Court jointly on the Petition for Reclamation filed by The Maxwell Finance Company and the Petition of the Trustee for the sale of the assets of the bankrupt corporation. After proper notice was given, a hearing was held on the Petitions herein and testimony taken, which testimony has been reduced to writing and a transcript thereof has been filed with Exhibits attached. By agreement of the parties an order was entered permitting the sale of all of the property (excepting certain personal property covered by chattel mortgages listed as Exhibits F and G) and any liens, preferences or priorities which may be claimed were ordered transferred to the fund created by such sale.

This case may be divided into two separate matters, one involving the validity of certain chattel mortgages (Exhibits A through E) and the other concerning a factor's lien claimed by The Maxwell Finance Company (Exhibits H, 1 and J).

The record discloses that beginning on or about March 19, 1946, James H. Wyse, Harold G. Wyse and David S. Wyse, partners, doing business as Wyse Laboratories, borrowed $30,000.00 from The Maxwell Finance Company on a promissory note and gave to The Maxwell Finance Company a chattel mortgage (Exhibit A) to secure the repayment of said note. Later on, said partners caused the business to be incorporated under the laws of the State of Ohio with their principal place of business at Dayton, Ohio, and again subsequently executed notes for varying amounts and gave chattel mortgages to secure the repayment of said notes. (Exhibits B through G). This Court has already found that chattel mortgages F and G are valid and subsisting liens against the property described therein, and in the discussion which follows the Court will only consider the other chattel mortgages because of the circumstances surrounding the methods used in financing which resulted in the execution of the notes and mortgages.

The Trustee has attacked the validity of these mortgages for the reason that an unusual method of handling the financing obtained. For example, Wyse would borrow $30,000.00 on March 19, 1947, due 90 days from date; executed a note and a mortgage on certain property to secure the payment of said note. On or about the due date of the obligation Maxwell would issue a check to Wyse for ($30,000.00) and then

Wyse would issue its check to Maxwell for $30,000.00, but the note which was then given at the due date would be marked "This is a renewal note." This continued on many occasions throughout the transactions of financing and the testimony disclosed that in all of the situations wherein chattel mortgages A through E were given, at sometime or other there would be a payment by Maxwell to Wyse and check issued by Wyse back to Maxwell.

The Trustee's contention, simply stated, is that when Wyse issued a check to Maxwell the note for which the chattel mortgage was given as security then became paid and upon payment the chattel mortgage must fall. With this contention I cannot agree for the reason that the controlling case law in Ohio requires us to look to the facts and circumstances surrounding the transaction to determine the intention of the parties at the time of the transaction. I can find no evidence in the record which indicates any intention on the part of The Maxwell Finance Company or the Bankrupt Corporation that the method used constituted payment of the pre-existing note, thus discharging the security. The record is silent as to any reason for that particular method of handling the financing program This Court is of the opinion that there was no absolute payment of the obligation and that it was the intention of the parties that the new note should be a renewal of the old note and not a payment thereof. This Court follows the reasoning as set forth by Judge Hornbeck in the case of **Madlener v. Greathouse, 31 Abs. 434,** that the giving of a renewal note does not operate as a payment, satisfaction or discharge of the instrument for which it is given, unless it has been so agreed between the parties. The testimony of the President of the Bankrupt Corporation was to the effect that there was no intention to pay the pre-existing note by the back and forth issuance of checks and that in his mind he was merely renewing the note. The Court, therefore, finds that the liens of The Maxwell Finance Company as set forth under its chattel mortgages, Exhibits A through E, are valid liens against the property described in said mortgages.

## 2. FACTOR'S LIEN

The second part of this opinion involves an Agreement dated June 25, 1946, between the bankrupt and The Maxwell Finance Company to create a factor's lien under and by virtue of the provisions of §8364-1 GC et seq. The record discloses that on June 25, 1946, the bankrupt and The Maxwell Finance Company entered into a factor agreement which is in evi-

dence as Exhibit I. On the same date the bankrupt executed a statement of itself as borrower, setting forth the merchandise to be covered by the factor's lien which is in evidence as Exhibit J. On the same date a notice of lien was executed by both parties which is in evidence as Exhibit H. This notice was properly filed for record in the Office of the Recorder of Montgomery County, Ohio, as required by law. The factor's lien was given as security for the repayment of various advances made by the factor to the borrower over a period of time extending through June 25, 1947.

The Trustee does not question the validity of the factor's lien or the compliance with the provisions of the Factor's Lien Law between borrower and the factor as of June 25, 1946, but does question the extent of the merchandise to be covered by the lien. The Trustee's contention is that the factor's lien could only cover the merchandise as set forth in Exhibit J, listing the typewritten portion on the statement of the borrower as being the property covered and claims that the printed portion of said Exhibit does not apply. To be more specific, the Trustee challenges the right of the factor to have a lien on merchandise coming into existence or acquired by the borrower subsequently to the time of the execution of the written agreement or subsequent to the filing of the notice of the lien. The Trustee in support of this contention advances the argument that the factor was required to file additional notices in order to have the lien cover subsequently acquired merchandise, placing an interpretation upon §8364-2 GC, that it was necessary for the factor to secure additional statements from the borrower as other merchandise was acquired.

In this case we have no question of the iniquity of a secret lien which might be void under the provisions of Section 60a of the Chandler Act for we do have the giving of a public notice by the factor in order to establish his open and notorious lien.

The Factor's Lien Law is new in Ohio, having been enacted in 1945. So far as this Court knows there are no recorded decisions interpreting the provisions of the Act, except a Common Pleas Court decision in Montgomery County where the validity of the Act was upheld without opinion by the Court. It would seem beneficial to examine the reasons and circumstances which produce the Act. Only one state has had a Factor's Lien Act for any length of time, New York having passed such an Act in 1911, and with but few exceptions the fifteen states which have enacted Factor Lien Laws have all done so beginning in 1945, and thereafter. All

of these Statutes are similar in form and provide in their essence for the maintenance of a lien on a shifting stock of goods in the possession of the borrower. In some states notice is required to be filed similar to the requirement in Ohio. In several states there is a requirement for the posting of notice on the principal place of business of the borrower and upon the warehouse where the goods may be stored or kept. Other states provide alternative recording of notice or placing of the notice at the principal place of business or the warehouse. In every case there is a requirement of notice. In some states, including New York, there is a legislative expression that the Act is to be liberally construed to give effect to those provisions and purpose. In many states there is no such legislative expression. The Act arises out of a business need and is the extension of a type of security device to be helpful in the financing of business. It permits a borrower to secure advances on work-in-process, inventory, etc. Without releasing possession of his goods, thus providing a method of financing a business operation where without the law he would be unable to do so through the former security devices. The need for such a law has long been evident. This seems to be demonstrated by the fact that fifteen states have enacted such a law within a period of two or three years. The law has been found to be helpful to the business community. This expression was derived from the report of Walter D. Yankauer, Chairman of the New Committee on Federal Liens and Pledges of the American Bar Association.

The Trustee calls the Court's attention to certain differences between the New York and the Ohio Factor Lien Law. One difference has to do with the fact that the new York Act says that it shall be liberally construed and that substantial compliance shall be sufficient. In this connection the Trustee urges that a Court, in construing the Ohio Factor Lien Law, should follow the ordinary rule of interpretation which requires a strict interpretation and a strict compliance. There is no question in this case that there has been a strict compliance with the provisions of the Act regarding the execution of the necessary papers and the filing of notice. The question of strict interpretation of the meaning of the Act is posed by the Trustee in his interpretation of the necessity of the factor filing amended notices to include after acquired property. We again revert to an examination of the purposes of the exactment of the law. Keeping those purposes in mind I cannot find justification for supporting the

contention of the trustee for should he be right, it would be necessary for the borrower to file a new statement and the factor to give new notice every time a pound of steel or a quart of oil should be purchased by the borrower. I do not believe the Legislature intended that such a situation should obtain, but feel that the provision for filing of amended notices did have in mind changes in the status of the parties or their respective interests. The Legislature did expressly have in mind that the lien should cover after acquired property by the use of the words "Whether such merchandise shall be in existence at the time of the execution of the written agreement or shall come into existence subsequently thereto, or shall subsequently thereto be acquired by the borrower." (Sec. 8364-2 GC.)

The Trustee further calls attention to the difference between the New York and Ohio Act, in that New York requires the posting of the notice in a conspicuous place at the main entrance of the store, etc. While this may be beneficial, it is within the province of the Legislature to specifically prescribe the type of notice which shall be given, and in Ohio there is the requirement only that it be filed in the Office of the Recorder of the proper county. In this connection, North Carolina provides for the filing of the notice either in the Recorder's Office or by the posting of a notice at the principal place of business of the borrower, or at a warehouse where the goods may be stored.

The Court has examined with great care what appears to be the leading case in the United States on the subject. The case was decided by Judge Hand and is styled In Re Comet Textile Company, Inc., 15 Fed. Supp. 963. The purposes of the Factor Act was amply described in the first syllabus. In that case it is said

"Purpose of the Factors Act was to permit creation of lien on merchandise to secure loans in cases where statutory conditions of notoriety were complied with in lieu of delivery of possession of merchandise to lienor."

It is also well to note the provisions of syllabus No. 3 of the Comet case wherein it is said

"Lien created under Factors Act allowing lien on merchandise to secure loans in cases where statutory conditions of notoriety were complied with in lieu of delivery of possession of merchandise to lienor held valid against creditors with claims antedating notice of the liens, where such claims

were not made liens attaching to merchandise prior to filing of notice."

Thus we see that the factor is protected even against the claims of creditors antedating the notice of the factor's lien where the statutory conditions of notoriety were complied with and this expression carries out the purpose background to enable a borrower to secure funds through this security device where otherwise they probably would not be available. This Court finds no substantial differences between the New York and Ohio Acts which would require any finding other than that as set forth by Judge Hand in the Comet case.

Under the definition of merchandise as set forth under §8364-1 GC, the factor's lien shall cover materials, goods-in-process and finished goods intended for sale whether or not requiring further manufacturing or processing, but shall not include motor vehicles, equipment, or trade fixtures of the borrower. The Bankrupt Corporation was engaged in the business of manufacturing of motorcycles which would fall within the definition of motor vehicles as prescribed by the Law of Ohio. (Sec. 6302-1 and 2; §6290-2 GC.)

The Petitioner, the Maxwell Finance Company informed the Court by letter on May 6, 1949, that it did not claim that motor vehicles owned by the bankrupt were covered by the factor's lien, the term motor vehicle including completed and fully assembled Wysecycles. The Attorneys for the trustee on May 12, 1949, concurred in the statement made by the attorneys for The Maxwell Finance Company so this Court does not include in this opinion any interpretation or effect to be given to the exception as set forth in the merchandise definition referred to herein above.

In conclusion, the Court finds that the chattel mortgages, Exhibits A through E, are valid liens covering all property described therein in favor of The Maxwell Finance Company, excepting after acquired property. As to the after acquired property provision in the mortgages, the mortgagee has waived any claim that the mortgages would cover any after acquired property.

The Court further finds that the factor's lien of The Maxwell Finance Company is a valid lien on all material, goods-in-process and finished goods, excepting any finished motorcycles, all motor vehiclles, equipment or trade fixtures of the Bankrupt Corporation.

An Entry may be prepared accordingly.