In the Matter of SUMMIT HARDWARE, INC., Bankrupt.

John A. SCHWEMLER, Trustee, Plaintiff,

v.

Everett L. FOOTE, Defendant.

No. 81669.

United States District Court
N. D. Ohio, E. D.

Jan. 6, 1961.

---

Clair Whitmer (of Johnson, Whitmer & Sayre), Akron, for trustee.

Clarence W. May (of Brouse, McDowell, May, Bierce & Wortman), Akron, for defendant.

CONNELL, Chief Judge.

This action is before the Court on a petition for review of an order and judgment of the Referee in Bankruptcy, which denied petitioner's (a defendant in trustee's petition to sell personalty) claim of a factor's lien on all the goods, chattels, wares, and merchandise of the bankrupt up to the amount of $25,000, the amount loaned to the bankrupt.

In studying the transcript of proceedings and the various exhibits that were so assiduously prepared by the Referee for the Court's consideration, it appears to us as if the Referee relied primarily upon the fact that the purported factor did not comply technically or strictly with the requirements of Ohio Revised Code, § 1311.60 regarding the creation of a factor's lien. Thus the issue decided by the Referee is somewhat more comprehensive than the issue actually created by plaintiff-trustee's answer No. 2 in reply to petitioner's cross-petition for reclamation. In any event, the issue which we deem as confronting us presently is whether Foote sufficiently complied with the provisions of the Ohio Factor's Law, O.R.C. §§ 1311.59–1311.64, so as to have created a valid factor's lien, thereby establishing rights to the personalty of the bankrupt superior to those of the trustee.

The section of the Ohio Factor's Law that the trustee asserts and the Referee finds has not been complied with by Foote, the petitioner, is Section 1311.60, and it reads, in pertinent part, as follows:

"If it is provided by a written agreement with the borrower, a factor shall have a lien upon such merchandise owned by and in the custody or possession of the borrower, including such merchandise as is temporarily out of the borrower's custody or possession, as is from time to time after the execution of said written agreement designated in separate written statements dated and signed by the borrower and delivered to the factor. * * * Such lien is perfected and valid from the time of filing the notice referred to in sections 1311.61 to 1311.64 * * *."

Section 1311.61 provides for the filing of the notice of the lien and the recording thereof in the appropriate county recorder's office(s). It is apparently conceded that Foote filed notice of the asserted factor's lien in due time and in due form, so that this procedural requirement is not in issue here.

As is indicated from the above-quoted language, Section 1311.60 contemplates the preparation of two separate written instruments. One is nominated "written agreement" and is the instrument that actually creates the lien, albeit that notice of the lien must be filed in accordance with Section 1311.61 before the lien becomes effective. The second written instrument contemplates a running record of the merchandise that is the security for the lien. To us it is significant that these statements, dated and signed by the borrower, are simply delivered to the factor and apparently are neither intended nor required to be part of the notice given to those who check the factor's lien index in the county recorder's office.

A review of the record before us indicates that Foote and the bankrupt entered into a lengthy written agreement which provided a lien in favor of Foote, as factor, "on all its (Summit Hardware, the bankrupt) hardware, screws, nuts, bolts, work in process, tools, merchandise,

and all other chattel property * * * including any and all chattel property held for sale * * * to cover the aforesaid note in the amount of Twenty-five Thousand Dollars (25,000.00) * * *. Said factor's lien shall cover any and all chattel property including nuts, bolts, hardware, tools, supplies, or merchandise hereafter acquired." It was further agreed that Summit Hardware would furnish Foote each thirty days or oftener a list of all merchandise acquired by it.

It can hardly be doubted that the written agreement fulfilled the first requirement of Section 1311.60; i. e. that the lien is to be created by means of a written agreement between the factor and the borrower. However, it appears, despite some argument by Foote to the contrary, that there were never any separate written agreements dated and signed by the borrower and delivered to the factor which contained the description of the merchandise subject to the lien, despite the agreement of the bankrupt to so provide.

It is because of this apparent failure to comply strictly with the provisions of Section 1311.60 that the Referee based his decision. In so holding, the Referee determined that the present factor's lien statute is in derogation of common law and thus must be construed strictly. Under such a construction, it is understandable that the Referee would determine that the failure to designate the secured merchandise in a separate written instrument was fatal to Foote's claim.

■ There is some question as to the exact nature of the instant statutory factor's lien, i. e. whether it is in derogation of common law or not. However, as we understand the express statutory law of Ohio, we are bound to afford the Ohio Factor's Law a liberal, not a strict, construction, no matter what the prior common law history might have been. Ohio Revised Code, § 1.11 states:

"Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice. The rule of the common law that statutes in derogation of the common law must be strictly construed has no application to remedial laws; * * *."

As we understand the underlying purpose of the Factor's law it is highly remedial in nature, enacted to remedy weaknesses in the then prevailing method of inventory financing. See 28 Cin.L.Rev. 99. Unless we give the statute a liberal construction we likely violate the purpose of the legislature in enacting it. Bown & Sons v. Honabarger, 1960, 171 Ohio St. 247, 168 N.E.2d 880; Bullock v. Horn, 1886, 44 Ohio St. 420, 7 N.E. 737.

■ It is clear from the written agreement creating the lien that both Foote and the bankrupt knew exactly what they were including in the list of property covered by the lien. Also, a reading of the agreement indicates with certainty that all of the bankrupt's inventory, both present and future, was covered by the lien for a period of three years from the date of the agreement, for under Section 1311.59 the use of the term "merchandise" contemplates materials, goods in process, and finished goods intended for sale. See also In re Wyse Laboratories, Inc., 1949, 55 Ohio Law Abst. 321. No one reading this agreement could have any reasonable doubt as to the intent to create a factor's lien, and as to what property was covered by the lien. This being so, in what way were subsequent and general unsecured creditors of the bankrupt prejudiced by the failure of the bankrupt to execute separate written statements designating the merchandise covered, when these statements are known only to the immediate parties and are not required by law to become a public record? As we read Section 1311.60, the primary purpose of these statements is for the protection and convenience of the parties to the agreement, for unless a third-party checks the factor's lien index first, then notes the factor's name and address, and then inquires as to what property is covered by the recorded lien, no one but the factor and the borrower would have

knowledge of or use for this separate statement. In the instant case, the notice of the lien was properly filed. If any party with a legitimate interest in the credit status of the bankrupt had discovered the recorded lien notice and then inquired of either Foote or the bankrupt as to what property was covered by the lien, the written agreement would provide him with all the necessary information. We do not understand how any prospective creditor could have been misled into a sense of false security by the lack of these separate written statements, nor in fact do we read the record of the case as containing any claim that the failure to execute these statements operated to the prejudice of any party, with the exception perhaps of Foote himself who stands to lose a secured loan of $25,000. We think the Ohio Supreme Court in Bown & Sons v. Honabarger, supra, has indicated the policy of Ohio courts on questions like the instant one, and although the case involved the question of a technical failure in the recording of a mechanic's lien, we ask here the same question that was asked by the Supreme Court there: Who was prejudiced by the technical non-compliance of the statute, and who did not receive notice of the lien as a result of this non-compliance that either should have or could have? In all fairness to the Referee, who is meticulous in all things, this case had not yet been decided at the time of his decision, and thus he did not have the benefit of what we consider an expression of the policy of the Ohio Supreme Court in this general area of statutory liens. We feel further that the Referee's decision in In re Wyse Laboratories, Inc., supra, also supports our position in that it illustrates the need for the continuing use of the factor's lien as an important aid in business financing.

We are thus in agreement with Foote that to disallow his claim of a factor's lien would unjustly enrich the general creditors of the bankrupt by allowing them to share equally in the bankrupt's property that was for the most part available for distribution by the bankruptcy court only because of the $25,000 loan running from Foote to the bankrupt. There was no evidence of fraud or attempted fraud on the part of Foote. Rather, the record indicates a genuine effort on his part to comply strictly with the technical requirements of the statute. The Supreme Court of the United States has said that the equity power of bankruptcy courts "have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." Pepper v. Litton, 1939, 308 U.S. 295, at page 305, 60 S.Ct. 238, at page 244, 84 L.Ed. 281. We think that substantial justice and not technical considerations will prevail only if Foote is restored to the status of a creditor protected by a legitimate factor's lien.

The decision of the Referee is reversed, and the matter is remanded to the bankruptcy court for compliance with the above opinion.