**In re Appeal of U.I.P. ENGINEERED PRODUCTS CORPORATION.**

No. 84 C 4973.
Bankruptcy Nos. 83 B 12245,
83 B 12246.

United States District Court,
N.D. Illinois, E.D.

Sept. 27, 1984.

Ira J. Bornstein, Harvey J. Barnett & Assoc., Chicago, Ill., for U.I.P.

Robert W. Berliner, Jr., Chicago, Ill., for A.P. Machine & Development.

Ronald S. Barliant, Miller, Shakman, Nathan & Hamilton, Chicago, Ill., for LaSalle National Bank.

Daniel A. Zazove, Towbin & Zazove, Chicago, Ill., for C.T.R., Inc.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This bankruptcy appeal raises no issues of bankruptcy law, but instead asks the Court to decide whether a title-retention contract·created a "security interest" under the Uniform Commercial Code ("UCC"). For the reasons stated below, we affirm the decision of the Bankruptcy Court, which held that a security interest was created.

### I.

The material facts are undisputed. The Appellee ("CTR") was a sublessee of the Appellant ("UIP") of a building owned by the LaSalle National Bank. Under the sublease, CTR had the right to use several cranes then owned by UIP. However, CTR defaulted on the sublease, and UIP obtained a money judgment against CTR and an order of replevin on the cranes.

On October 12, 1982, the parties signed a written agreement ("the agreement") settling the above claims and vacating the judgment. Under the relevant part of the agreement, UIP was to sell the cranes to CTR for about $15,000. CTR was to pay in monthly installments as part of a total settlement package of some $76,500.00. Paragraph two of the agreement stated that UIP would retain title to the cranes until CTR completely satisfied its obligation under the agreement.[1] Because the cranes were at the premises before the agreement, they were not moved upon the signing of the agreement.

CTR paid about $40,000 under the agreement before defaulting. On October 5, 1983, it filed its Chapter 11 bankruptcy petition. UIP had never filed a financing statement regarding the cranes or taken other steps to perfect a security interest in the cranes under Article 9 of the Uniform Commercial Code. Ill.Rev.Stat. ch. 26, § 9–101 et seq. (1983) (hereafter Code cited only by section number).

In the Bankruptcy Court, CTR and others filed a "Joint Motion to Sell Machinery, Equipment, and Related Property." On February 7, 1984, CTR filed and the Court entered an agreed order which stated that CTR owned the cranes, subject only to an unperfected security interest in favor of UIP. The order allowed CTR to convey the cranes to a third party.

On February 17, 1984, in order to prevent the sale of and regain possession of the cranes, UIP filed a motion for relief from automatic stay under 11 U.S.C. § 362(d).[2] The Bankruptcy Judge denied the motion, holding that the title-retention

---

1. The agreement stated:
   UIP will retain title to the aforesaid cranes until *all* sums due and owing to UIP under the terms of this Agreement are paid, at which time UIP will transfer title to said cranes to CTR. CTR, which has possession of said cranes pursuant to a prior leasehold, is permitted to retain use of the cranes rent free in accordance with the terms of this Agreement.
   (Emphasis added). As is clear from this clause, while the cranes were "worth" $15,000, title to them would not pass until all $76,000 of the agreement was paid.

2. 11 U.S.C. § 362(d)(1) provides:
   (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

provision of the agreement created only a "security interest," § 1–201(37), that UIP never perfected the security interest, and that UIP was therefore merely a general unsecured creditor of the CTR estate with no right to relief from a § 362 automatic stay. UIP then appealed to this Court.

## II.

At the outset we note that in reviewing orders of the Bankruptcy Court, we evaluate factual questions under the "clearly erroneous" standard, but review questions of law independently. *See In re Evanston Motor Co.,* 735 F.2d 1029, 1031 (7th Cir.1984); *In re Tarnow,* 35 B.R. 1014, 1015 (N.D.Ind.1983). This appeal presents only a legal question. Thus, the Court has an independent scope of review. With this standard in mind, we address the one issue on appeal: did the title-retention clause of the agreement create a security interest under the UCC?

## III.

CTR argues that the court below correctly held that the title-retention agreement created a security interest, which UIP failed to perfect. We agree. The UCC defines a "security interest" in relevant part as:

> an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 2–401) is limited in effect to a reservation of a "security interest." ...

Section 1–201(37). UIP does not deny that it had an "interest" in the cranes; indeed, it concedes as much when it argues that it holds title. Nor does UIP deny that its "interest ... secured payment or performance of" the settlement agreement. That much is plain from the face of the title-retention clause. Thus, the agreement easily satisfies the requirements of the first sentence of § 1–201(37). We also believe that under the second sentence, UIP's "retention of title ... is limited in effect to a reservation of a security interest."

The rest of the analysis flows easily from the conclusion that the title-retention agreement created a security interest. Because a security interest was created, Article 9 of the UCC applies to the agreement. *See* § 9–102;[3] § 9–113.[4] Under Article 9, whether UIP or CTR held title to the cranes is immaterial to determining their respective rights. Section 9–202.[5] UIP admittedly failed to file a financing statement under § 9–401 and thus never perfected its security interest. Accordingly, UIP's unperfected security interest is subordinate to the rights of CTR, who as debtor-in-possession, is considered under the Bankruptcy Code, 11 U.S.C. §§ 554(a), 1107, to be a hypothetical judgment creditor without notice under state law. *See* § 9–301(1)(b) (unperfected security interest is subordinate to lien creditor); § 9–301(3) ("lien creditor" includes a trustee in bankruptcy).

UIP argues that the above analysis is too neat. It does not contest that part of the analysis which flows from the conclusion that the title-retention contract fell within § 1–201(37). Rather, it argues that the contract does not in fact satisfy § 1–201(37), and so the rest of the above analy-

---

**3.** Section 9–102 provides:

> (1) Except as otherwise provided in Section 9–104 on excluded transactions, this Article applies
> (a) to any transaction ... which is intended to create a security interest in personal property ... including goods....
> (2) This Article applies to security interests created by contract including ... title retention contract intended as security....

**4.** Section 9–113 states:

> A security interest arising solely under the Article on Sales (Article 2) is subject to the provisions of this Article except [when] ... the debtor does not have or does not lawfully obtain possession of the goods....

**5.** Section 9–202 provides:

> Each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor.

sis is irrelevant.[6] Its argument rests on the fact that the cranes were not moved after the sale to CTR because CTR already possessed them under the sublease. Since they were not moved, they were not "shipped or delivered," claims UIP, and thus the second sentence of § 1–201(37) is not satisfied. We have already met that sentence, which says, "The retention ... of title by a seller of goods *notwithstanding shipment or delivery* to the buyer (Section 2–401) is limited in effect to a reservation of a 'security interest.'" (Emphasis added). In effect, UIP is arguing that § 1–201(37) distinguishes title-retention contracts which involve physical delivery from title-retention contracts where the buyer already possesses the goods: in the former situation a security interest is created, but in the latter, one is not. We believe that the UCC contemplates no such distinction, and indeed, the policies underlying the Code forbid such a distinction.

■ The plain grammar of the second sentence does not reasonably imply UIP's interpretation. The phrase, "notwithstanding shipment or delivery," does not act as a modifier which divides title-retention contracts into two types. The phrase does not exclude the rare situations where the goods are not moved. Read in the context of the first sentence, which defines "security interest" broadly and admittedly sweeps in the present agreement, we do not think that UIP's reading is tenable. As the drafters of the Code have made clear, the creation of a security interest depends pri-

marily on the parties' intent. *See* § 9–102 (Official Comment 1). Whether the goods were moved or not would usually, if not always, be irrelevant to whether the parties intended to create a security interest. Such is the case here. The title-retention clause was plainly intended to secure CTR's payments. The fact that UIP was to "retain title" to the $15,000 crane until the whole $76,000 was paid reinforces the conclusion that the parties intended that the cranes secure the transaction. Just because CTR happened to possess the cranes already under the sublease cannot have been relevant to the parties when they signed the agreement.

We cannot think of, nor does UIP offer, any UCC policy reason why the creation of a security interest should hinge on whether the goods were physically moved or not. To the contrary, policies behind the Code counsel against such a distinction. One other court besides the Bankruptcy court below has addressed this issue, reaching the same result we do. *See In re Happy Jack's Restaurant*, 29 UCC Rep.Serv. 653 (Bankr.Me.1980) (title retention agreement created security interest even though goods were not moved).[7] This holding is rooted in part in the policy underlying Article 9 that "secret liens" are to be avoided. 29 UCC Rep.Serv. at 657;[8] *see also Harney*, 113 Ill.App.2d at 466; 251 N.E.2d at 26 (relying on same policy in a physical delivery case). UIP's interpretation of § 1–201(37) would create the odd situation

---

**6.** If UIP were correct, and no security interest was created, then Article 9 would not come into play at all. *See* § 9–102(1)(a) (Article applies to transaction intended to create a security interest). Section 9–202 would not apply, and so title would become "material" to the dispute, invoking the provisions of § 2–401(3). The parties' settlement agreement would constitute an "otherwise explicit" one under § 2–401(3), and its terms would thus control the outcome: UIP would have retained title.

**7.** Courts have commonly held that title-retention agreements created security interests where goods were physically delivered. *See, e.g., Household Finance Corp. v. Mowdy*, 13 Ill. App.3d 822, 827, n. 2, 300 N.E.2d 863, 866 (1973); *Harney v. Spellman*, 113 Ill.App.2d 463,

465, 251 N.E.2d 265, 266 (1969); *In re Tom Woods Used Cars, Inc.*, 24 B.R. 529 (Bankr.E.D. Tenn.1982); *In re Piccirillo*, 29 UCC Rep.Serv. 1409 (Bankr.W.D.Pa.1980).

**8.** The Court in *Happy Jack* stated:

It is not difficult to imagine the mischief which would be created by the position urged by the defendants. The proliferation of secret liens would be limited only by the fertile imaginations of conveyancers.

UIP's interpretation of § 1–201(37) would create the same potential for "mischief." Where goods were not moved, sellers could use the title retention artifice to create *de facto* security interests without going through the public filing procedure of Article 9.

that secret liens would be damned when the goods are physically delivered but blessed when goods did not have to be moved. We decline to construe the Code to generate this anomaly which would frustrate one of the policies underlying it. *See* § 1–201(1) (Code "shall be liberally construed and applied to promote its underlying purposes and policies").

UIP argues that our reasoning would gut § 2–401(3). We disagree. We have held that because UIP's title-retention clause created a security interest, Article 9 commanded that title was immaterial to the outcome; thus, § 2–401 by its very terms does not apply to this case.[9] Contrary to UIP's warning, just because § 2–401 does not control this case does not mean it would be impotent elsewhere. It merely does not apply where, as here, a security interest has been created.[10] Sections 2–401(2), (3) can apply to numerous other situations, usually involving the rights of third parties. *See, e.g., In re Emergency Beacon Corp.*, 665 F.2d 36, 40–42 (2d Cir. 1981) (§ 2–401(3) relevant to whether party had power to convey a security interest to a third party); *Elliott v. State*, 254 S.E.2d 900, 901 (Ga.App.1979) (§ 2–401(2) and larceny); *Alabama v. Delta Airlines, Inc.*, 356 So.2d 1205, 1207 (Ala.App.1978) (§ 2–401(2) and liability for sales tax); *see also* Ill.Ann.Stat. ch. 26, § 2–401 (Smith-Hurd 1963) (Illinois Code Comment) (concept of title is subordinate under Code, with title generally retaining importance where rights of third parties are involved). Our holding does not weaken § 2–401 in these

other areas, and thus does not render § 2–401 meaningless.

Accordingly, we affirm the decision of the Bankruptcy Court. It is so ordered.

---

9. "Insofar as ... matters concerning title become material the following rules apply ..." § 2–401 (preamble).

10. This is reinforced by § 2–401(1) which provides in relevant part:

[a]ny retention ... by the seller of the title ... in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions and to the provisions of [Article 9], title to goods passes from the seller to the buyer in any manner and on any condition explicitly agreed on by the parties.

Thus, § 2–401(1) dictates that Article 9 embraces title-retention contracts. UIP again highlights the "Shipped or delivered" phrase, and argues that this phrase exempts unmoved goods from § 2–401(1). We disagree for the policy reasons stated earlier, and for another reason: The term "delivered," as it appears in that phrase means *both* physical delivery and "delivery" without movement of goods. § 2–401(2) and § 2–401(3) make this double meaning explicit. § 2–401(2) describes "physical delivery" situations; § 2–401(3) may apply "where *delivery* is to be made without moving the goods." (Emphasis added). In sum, then, § 2–401(1) buttresses our earlier analysis that Article 9, and not § 2–401(3), controls the outcome of this case.