In re UTAH AIRCRAFT ALLIANCE, Debtor.

G & B Aircraft Management and Gene Curtis, Appellants,

v.

David E. Smoot, Trustee, United States Trustee, and Utah Aircraft Alliance, Appellees.

BAP No. UT–05–032.
Bankruptcy No. 04T–40205.

United States Bankruptcy Appellate Panel for the Tenth Circuit.

May 19, 2006.

5. This obligation increased from $660,707.00 as set forth in Schedule B filed in Debtor's prior bankruptcy case.

Timothy Miguel Willardson, Salt Lake City, Utah, for Appellants.

Jennifer A. Brown, Mabey & Murray LC, Salt Lake City, Utah (Steven J. McCardell with her on the brief), for Appellees.

Before CORNISH, BROWN, and McNIFF, Bankruptcy Judges.

## ORDER DENYING REHEARING

BROWN, Bankruptcy Judge.

The matter before the Court is the Motion for Rehearing ("Motion"), filed March 28, 2006, by the Appellants. The Trustee filed an objection to the Motion on March 31, 2006.

Neither Federal Rule of Bankruptcy Procedure 8015 nor Rule 8015–1 of this Court's Local Rules states the substantive requirements for motions for rehearing. However, when those Federal and Local Rules are silent, Local Rule 8018–11(b) provides that we may order application of the Federal Rules of Appellate Procedure or the Tenth Circuit Rules. Federal Rule of Appellate Procedure 40(a)(2) declares that a petition for rehearing before one of the United States Courts of Appeals "must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition."

Tenth Circuit Rule 40.1(A) adds that: "A petition for rehearing should not be filed routinely. Rehearing will be granted only if a significant issue has been overlooked or misconstrued by the court." We believe that the standards set by these rules should apply to the Motion.

The Motion does not demonstrate a basis for rehearing. Its arguments regarding unfair surprise and Utah Code Ann. § 70A–2–401(3) are unavailing. The Motion notes that Utah's Aircraft Lien Act, discussed on page 15 of the Opinion, was not enacted at the time G & B's alleged repairman's lien arose. But, assuming that the Aircraft Lien Act is inapplicable, the end result is the same. A party who seeks relief from stay has the burden of demonstrating "cause" sufficient to grant relief from stay. G & B did not meet its burden because it did not show at that preliminary stage that it held a valid lien. The ultimate determination of whether G & B holds a valid lien was not before the bankruptcy court and is not before this Court; that determination must be made as part of an adversary proceeding. What was before the bankruptcy court and what is before this Court is whether G & B made a sufficient showing to justify relief from stay. G & B did not make a sufficient showing, and the bankruptcy court did not abuse its discretion in denying the relief requested. The Court will withdraw its March 20, 2006, Opinion and substitute the attached Opinion, which omits any reference to the Aircraft Lien Act.

Accordingly, it is HEREBY ORDERED that:

1. The Motion is DENIED.

2. The Court's Opinion, entered March 20, 2006, is WITHDRAWN, and the attached opinion is substituted in its place.

## OPINION

G & B Aircraft Management ("G & B") appeals an Order denying its motion to lift the stay under 11 U.S.C. § 362(d)(1)[1] to allow it to enforce its rights as to five airplanes. Central to this dispute is the question of whether language in its Purchase Agreements with the Debtor Utah Aircraft Alliance ("UAA") is effective that purports to retain G & B's title to the airplanes until UAA has fully paid for them. G & B contends that the bankruptcy court erred in finding that it was not the owner, but held only an unperfected security interest in the planes. It also appeals the court's holding that it did not possess a valid repairman's lien on the aircraft. For the following reasons, we affirm.

## I. Background

The founders of UAA formed it as a club to provide licensed pilots with cost-effective access to airplanes. Gene Curtis was a shareholder and officer of UAA for most of UAA's existence. He was also shareholder and officer of G & B. G & B managed UAA, sold five planes to UAA during the time period of December 1, 2000, to March 1, 2002, under contracts retaining title to the planes until all payments were made; and provided maintenance for the planes.

G & B's motion for stay relief claims that a balance remains due on the purchase price for each of the five planes. Although G & B transferred title to one of

**1.** This bankruptcy proceeding was filed before enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Because the provisions of BAPCPA apply to only to those cases filed on or after its effective date of October 17, 2005, all future statutory references to "Section" will be to Title 11 of the United States Code as it appeared before BAPCPA, unless otherwise noted.

the planes to UAA, it alleges that the transfer was merely an accommodation to help UAA secure funding. G & B asserts that it holds title to the four remaining planes. G & B also claims that UAA did not pay for all of G & B's maintenance work on the planes. G & B sought relief from stay to recover the planes, alleging that: (1) it held title to the planes; (2) the amounts due on the planes exceeded the planes' values; (3) G & B had received no payments since the bankruptcy filing; and (4) the planes were deteriorating due to lack of use and maintenance. G & B's motion limited its request for stay relief to 11 U.S.C. § 362(d)(1), for "cause," including a lack of adequate protection.

At the hearing on the motion for relief from stay, G & B alleged for the first time that it also held a repairman's lien for unpaid maintenance work. Although he had not raised the issue in his opposition to the motion, the Trustee argued for the first time at the hearing that G & B held only an unperfected security interest in the planes. Following an evidentiary hearing, the bankruptcy court found in the Trustee's favor, holding that G & B had only a security interest in the planes, which had not been perfected, and had no repairman's lien. Since the court found G & B held only an unperfected security interest, it held that G & B was not entitled to adequate protection and denied G & B's request for relief from the stay.

## II. Appellate Jurisdiction

This appeal timely followed. An order denying relief from stay is a final order.[2] The parties have consented to this Court's jurisdiction because they did not elect to have the appeal heard by the United States District Court for the District of Utah.[3]

## III. Standard of Review

■ Ordinarily, we review a bankruptcy court's determination of "cause" under Section 362(d)(1) for an abuse of discretion.[4] "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[5] An abuse of discretion, however, may exist when a ruling is premised on an erroneous conclusion of law or on clearly erroneous fact findings.[6] We review the bankruptcy court's conclusions of law under the *de novo* standard.[7] "When an appellate court reviews a [trial] court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable . . . ."[8]

## IV. Discussion

### A. The Scope of a Ruling on a Motion for Stay Relief

■ With certain exceptions not relevant here, 11 U.S.C. § 362(e) provides that

2. *Eddleman v. United States Dept. of Labor,* 923 F.2d 782, 784–86 (10th Cir.1991) *overruled in part on other grounds, Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson,* 968 F.2d 1003, 1005 n. 3 (10th Cir. 1992).

3. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

4. *Franklin Sav. Ass'n v. Office of Thrift Supervision,* 31 F.3d 1020, 1023 (10th Cir.1994).

5. *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman,* 926 F.2d 1539, 1553–54 (10th Cir.1991) (further quotation omitted)).

6. *Kiowa Indian Tribe v. Hoover,* 150 F.3d 1163, 1165 (10th Cir.1998).

7. *Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994).

8. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 401, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

the automatic stay in bankruptcy automatically terminates within thirty days from the filing of a request for stay relief to bring an action against property of the estate, unless the court expressly orders the stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination on a stay relief motion. Because the statute requires bankruptcy courts to rule quickly on stay motions, a relief from stay proceeding is by its nature a cursory or summary proceeding. It does not replace the need for filing an adversary proceeding in order to obtain a final determination as to the validity, extent or priority of a creditor's lien.

The legislative history on § 362 analogizes a preliminary hearing on the stay to a preliminary injunction hearing.

> The filing of the petition which gives rise to the automatic stay is similar to a temporary restraining order....
>
> At the expedited hearing under subsection (e), and at all hearings on relief from the stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters. Those counterclaims are not to be handled in the summary fashion that the preliminary

hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustees to recover property of the estate or to object to the allowance of a claim.[9]

> ... However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. What is precluded is a determination of such collateral claims on the merits at the hearing.[10]

■ At a stay hearing, the court merely determines whether the movant has a colorable claim, i.e., a facially valid security interest. It then should consider whether the objector has raised a colorable defense that, not merely offsets the movant's claim, but actually would defeat the movant's claim. In this context, the bankruptcy court limits its consideration of defenses to those that strike at the heart of the creditor's lien or that bear on the debtor's equity in the property.[11]

■ The Trustee's theory that G & B held only an unperfected security interest in the planes aimed at the heart of G & B's ownership claim and bore directly on UAA's equity in the property. Thus, it is the type of defense that a bankruptcy court may properly exercise its discretion to hear and consider. G & B complains

**9.** *United Cos. Fin. Corp. v. Brantley (In re Brantley)*, 6 B.R. 178, 187–88 (Bankr.N.D.Fla. 1980) (citing H.R.Rep. No. 95–595, at 344 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6300–01).

**10.** *Id.* (citing S.Rep. No. 95–989, at 55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5841).

**11.** *Id.* at 188; *See also Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32–33 (1st Cir. 1994); *In re Tally Well Serv., Inc.*, 45 B.R. 149, 152 (Bankr.E.D.Mich.1984); *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1234 (7th Cir.1990). The Tenth Circuit has not published any decisions on the scope of a stay relief proceeding, but in *In re Rexotech Cal., Inc.*, Nos. 91–1323 & 91–1324, 1992 WL 168932, at *2 (10th Cir. July 17, 1992), the court dismissed an appeal for lack of jurisdiction where the district court had remanded a stay lift order to the bankruptcy court for further proceedings. In so doing, the Tenth Circuit discussed the scope of stay hearing, citing *Vitreous Steel* for the proposition that stay relief considerations are "limited in scope" and that the party seeking relief need only show a "colorable claim."

that this defense or theory was not raised in the Trustee's objection to the motion and, as a result, it has been denied due process. In truth, the Trustee surprised G & B with this legal argument in closing at the final evidentiary hearing.

UAA filed its Chapter 7 petition immediately before the holidays, on December 20, 2004. G & B filed its motion seeking stay relief little more than one month later, on January 31, 2005. Before the Trustee had even had his counsel employed in this case, he had to defend this motion. Not uncommonly, trustees must be prepared to defend stay motions before they have an opportunity to fully apprise themselves of the facts and various theories available to them. Some defenses become clear only after the witnesses have testified or the documents have been introduced as exhibits. This fast pace of litigation occurs because the statute requires the bankruptcy court to hear and rule on such motions within thirty days or else the stay terminates as a matter of law. Unlike debtors and trustees, a creditor always has the ability to waive the 30–day period and request additional time for briefing or discovery. G & B did not request a further opportunity to brief the legal issues raised by the Trustee in closing. Following the court's denial of its motion, G & B did not request subsequent reconsideration from the bankruptcy court.

Furthermore, G & B has not had its lien interests avoided without due process. The court's ruling constitutes only a finding that the Trustee had a colorable basis to dispute both G & B's claim to ownership of the aircraft and its claim of a properly perfected lien. The parties admitted at oral argument before this Court that the bankruptcy court's ruling did not relieve the Trustee of the need to file an adversary proceeding to determine the nature, extent and validity of G & B's interest in the planes. G & B will still have its day in court on the Trustee's legal theories.

**B. Adequate Protection of G & B's Security Interest**

**1. State Law Determines the Nature of G & B's Property Interest; Federal Law Governs Perfection**

According to G & B, the bankruptcy court's denial of its motion was premised on an erroneous conclusion that the Debtor acquired an ownership interest in four of the planes. G & B contends that it remains the owner of the planes because of either its title-retaining Purchase Agreements or because it remains the registered owner with the FAA. In order to address these issues, we must first determine what law applies.

 "Property interests are created and defined by state law."[12] "Unless some federal interest requires a different result," state law determines the nature of a debtor's interest.[13] Thus, state law defines G & B's interest in the airplanes, unless some federal interest compels a different result. G & B refers to the registration provisions of the Federal Aviation Act (the "Act") as a compelling federal

---

12. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), *quoted in Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *see also, e.g., In re Wise,* 346 F.3d 1239, 1241 (10th Cir.2003); *Bailey v. Big Sky Motors, Ltd. (In re Ogden),* 314 F.3d 1190, 1197 (10th Cir.2002) (quoting *In re Taylor,* 133 F.3d 1336, 1341 (10th Cir.1998) ("The existence

and extent of [the debtor's interest in the property] is determined by state law.")); *In re Stat–Tech Int'l Corp.,* 47 F.3d 1054, 1057 (10th Cir.1995); *In re Busch,* 294 B.R. 137, 142 (10th Cir. BAP 2003).

13. *Butner,* 440 U.S. at 55, 99 S.Ct. 914; *accord Nobelman,* 508 U.S. at 329, 113 S.Ct. 2106.

interest.[14] Nothing in the Act's registration provisions, however, attempts to define property interests in aircraft. There is no reason to believe, therefore, that Congress intended to preempt state law that creates or defines interests in personal property, such as aircraft.[15]

The Act establishes a federal recording system for registration of conveyances and liens affecting title to aircraft.[16] The Act creates " 'a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft.' "[17] According to the Tenth Circuit, "Congress has preempted that field and state recording statutes are not applicable to such title instruments."[18] In the Official Comment to Utah Code Ann. § 70A–9a–311(1)(a), the commentators acknowledged that perfection of an interest in aircraft is governed by the Act, not by Utah's Uniform Commercial Code.[19]

The Act itself expressly states that state law will govern issues such as the validity of a conveyance. "The validity of a conveyance . . . that may be recorded under section 44107 of this title is subject to the laws of the State . . . at which the conveyance . . . is delivered . . . ."[20] As a result, many courts, including the Tenth Circuit, have concluded that state law determines the nature of the property interest and the Act governs issues of perfection.[21]

**14.** 49 U.S.C. § 101 *et seq.* The registration provisions of the Act, which are the provisions relevant to this discussion, are set forth in Chapter 441 of the Act, §§ 44101–44113. When first enacted, these sections were designated as different section numbers. Technical amendments to the Act renumbered the sections, but have not altered the content of the registration provisions. Cases interpreting the prior Act, therefore, are used to interpret the same provisions in the current Act. *See, e.g., In re Equipment Leasors of Pa.,* 235 B.R. 361, 364 n. 5 (E.D.Pa.1999).

**15.** *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981) (preemption of state law by federal law is not favored "in the absence of persuasive reasons . . ., or that the Congress has unmistakenly so ordained.").

**16.** 49 U.S.C. § 44107(a)(1).

**17.** *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 411, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983)(quoting *Hearings Before the H. Comm. on Interstate and Foreign Commerce,* 75th Cong., 3d Sess. 407 (1938)) (testimony of F. Fagg, Director of Air Commerce, Dept. Of Commerce).

**18.** *State Sec. Co. v. Aviation Enters., Inc.,* 355 F.2d 225, 229 (10th Cir.1966).

**19.** Utah Code Ann. § 70A–9a–311(1)(a) & cmt. 2 (2000) (Financing statement need not be filed to perfect interest in property when a federal statute, such as the Act, creates national registry system. Perfection in such instances may be "achieved only through compliance with that system (i.e., filing under this Article is not a permissible alternative).").

**20.** 49 U.S.C. § 44108(c)(1).

**21.** *State Sec. Co.,* 355 F.2d at 229 ("questions of the validity of [aircraft] title documents, actual notice, good faith purchaser status, and the like, must be resolved under state law"); *see also, e.g., Philko,* 462 U.S. at 413, 414 n. 8, 103 S.Ct. 2476 (Court holds that "state law determines priorities" of interests recorded and perfected under the Act, and also recognizes that property interests in aircraft are determined under state law), *quoted in Equipment Leasors of Pa.,* 235 B.R. at 365 (determining validity of security interest in aircraft under state law); *Aircraft Trading & Servs., Inc. v. Braniff, Inc.,* 819 F.2d 1227, 1231–32 (2d Cir.1987) (recognizing that priority and validity of interest are determined under state law; perfection as to third parties governed by federal law); *In re Gelking,* 754 F.2d 778, 780–81 (8th Cir.1985) (debtor's "rights" in aircraft collateral determined under state law); *South Shore Bank v. Tony Mat, Inc.,* 712 F.2d 896, 898 (3rd Cir.1983) (per curiam) (priority of lien perfected under the federal Act is determined by state law); *Sanders v. M.D. Aircraft Sales, Inc.,* 575 F.2d 1086,

## 2. Applicable Uniform Commercial Code Provisions

■■■ The Purchase Agreements in this case expressly provide that title to the aircraft would not pass to the buyer until the Debtor had fully performed its obligations. G & B contends that this language is sufficient to retain its ownership interest. Accordingly, it did not record a security interest in the planes with the Federal Aviation Agency (the "FAA"). Unfortunately for G & B, however, Utah's Uniform Commercial Code provides that the "retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 70A–2–401) is limited in effect to a reservation of a 'security interest.' "[22]

Section 70A–2–401 provides:

(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 70A–2–501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this act. *Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions* and to the provisions of the chapter on Secured Transactions (Chapter 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.[23]

Consequently, under Utah law, G & B's attempt to retain title to the planes was ineffective. Title passed to the Debtor when G & B delivered the planes.[24] G & B then held only a security interest.[25]

G & B further argues that the parties' agreement overrides this statutory provision on the effect of title retention language. We do not agree.

While the parties' agreement may vary the operation of the UCC, they may do so only when "it is not otherwise expressly provided" in the UCC.

The parties cannot, by agreement, vary the effect of a seller's reservation of title. Any agreement concerning the passage of title, whether oral or written, is subject to the provision in UCC § 2–401 limiting retention of title by the

1088–89 (3rd Cir.1978) (state law determines validity of instruments subject to recording under Act); *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.,* 570 F.2d 1220, 1224 (5th Cir.1978) (same); *Fitzgerald v. Idaho First Nat'l Bank (In re Disney, Inc.),* 24 B.R. 155, 156 (Bankr.D.Id.1982) ("While the validity of security interests in airplane or airplane parts is governed by state law, the perfection of those interests is governed by federal law." (citation omitted)); *Norris v. Ins. Co. of N. Am.,* 26 N.C.App. 91, 215 S.E.2d 379, 388 (1975) (state law governs validity of ownership and interests); *Idabel Nat'l Bank v. Tucker,* 544 P.2d 1287, 1290–91 (Okla.Civ.App. 1975) (same); *J.C. Equip., Inc. v. Sky Aviation, Inc.,* 498 S.W.2d 73, 77 (Mo.Ct.App. 1973) (same).

**22.** Utah Code Ann. § 70A–1–201 (37)(a) (2005).

**23.** Utah Code Ann. § 70A–2–401(1)(1965)(emphasis added).

**24.** G & B contends it did not transfer possession of the aircraft to the Debtor, and we address this argument separately below.

**25.** *See, e.g., Uni–Products, Inc. v. Bearse (In re Uni–Products, Inc.),* 153 B.R. 764, 768 (Bankr.E.D.Mich.1993) (applying the same U.C.C. provision under Michigan law and holding that title retention language created only a security interest); *In re U.I.P. Engineered Prods. Corp.,* 43 B.R. 480, 482 (N.D.Ill. 1984) (same, Illinois law); *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 534 S.E.2d 688, 693 (2000) (same, South Carolina law); *Am. Aviation, Inc. v. Aviation Ins. Managers, Inc.,* 244 Ark. 829, 427 S.W.2d 544, 547–48 (1968) (same, Arkansas law).

seller in goods delivered to the buyer to a reservation of a security interest.[26] G & B is bound by the language of Utah's statute, which expressly provides that title retention language creates only a security interest.

### 3. Factual Disputes Regarding Delivery of the Planes

 Next, G & B argues that title never passed to UAA because it never delivered the planes. It claims that the planes were at all times stored at hangars owned and operated by G & B. Accordingly, it argues that title did not pass to the Debtor under Utah Code Ann. § 70A–2–401.

This argument does not acknowledge the explicit provisions of that statute. Its later subsections (2) and (3) further provide:

> (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading
>
> > (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

> (b) if the contract requires delivery at destination, title passes on tender there.
>
> (3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,
>
> > (a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or
> >
> > (b) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.[27]

Subsections 1, 2, and 3 read together state that if a contract purports to retain title until all payments are made, that provision is ineffective. If a contract is otherwise silent as to when title passes, title passes at the time the seller commits to performing the contract. If the contract anticipates shipment of goods, the seller commits at the time of shipment. If the contract requires delivery, title passes on delivery. If the contract does not anticipate delivery of goods but anticipates that title documents will be conveyed, the seller commits at the time of conveyance of title documents. If the contract does not anticipate delivery of goods and title documents will not be conveyed, the seller commits at the time of contracting.[28] Thus, whatever act demonstrates the seller's commitment serves to transfer title, regardless of whether the contract contains title retention language.

---

26. 1A *Anderson on the Uniform Commercial Code* § 1–302:16 (3rd ed. rev.2006) (footnotes omitted).

27. Utah Code Ann. § 70A–2–401(2)–(3) (1965).

28. *See* Utah Code Ann. § 70A–2–401 cmt. 4 (1965) ("The factual situations in subsections (2) and (3) upon which passage of title turn actually base the test upon the time when the seller has finally committed himself in regard to specific goods. Thus in a 'shipment' contract he commits himself by the act of making the shipment. If shipment is not contemplated subsection (3) turns on the seller's final commitment, i.e. the delivery of documents or the making of the contract.")

G & B's delivery argument not only contradicts the language of the Uniform Commercial Code, but it also contradicts its underlying policies. Rejecting a similar argument, one court explained:

> We cannot think of, nor does [the Appellant] offer, any UCC policy reason why the creation of a security interest should hinge on whether the goods were physically moved or not. To the contrary, policies behind the [Uniform Commercial] Code counsel against such a distinction. One other court besides the Bankruptcy court below has addressed this issue, reaching the same result we do. *See In re Happy Jack's Restaurant,* 29 UCC Rep. Serv. 653 (Bankr.Me.1980) (title retention agreement created security interest even though goods were not moved). This holding is rooted in part in the policy underlying Article 9 that "secret liens" are to be avoided. 29 UCC Rep. Serv. at 657; *see also Harney v. Spellman,* 113 Ill.App.2d at 466, 251 N.E.2d at 265 (relying on same policy in a physical delivery case). [The Appellant's] interpretation of § 1–201(37) would create the odd situation that secret liens would be damned when the goods are physically delivered but blessed when goods did not have to be moved. We decline to construe the Code to generate this anomaly which would frustrate one of the policies underlying

it. *See* § 1–201(1) (Code "shall be liberally construed and applied to promote its underlying purposes and policies").[29]

### 4. No Cause Exists for Relief Due to Lack of Adequate Protection of an Unperfected Security Interest

■ G & B's motion is predicated on its assertion that it is the owner of these planes. According to G & B, its ownership interest is not adequately protected and, therefore, "cause" exists to grant stay relief. Having rejected its ownership claim, and finding its security interest unperfected, the bankruptcy court found no basis for a finding of lack of adequate protection. We find no abuse of discretion in this holding.

The Bankruptcy Code does not define the phrase "adequate protection of an interest in property." In attempting to define it, federal courts, including the Supreme Court, have looked for guidance to Section 361, which provides three methods by which adequate protection may be rendered to a creditor.[30] All three of these sections presume that the creditor requesting adequate protection has a secured interest in the property at issue.[31] Consequently, the majority of courts have concluded that Section 362(d)(1) also addresses only the rights of secured creditors.[32] A minority of courts have concluded that unsecured creditors may be

**29.** *U.I.P. Engineered Prods. Corp.,* 43 B.R. at 483–84 (footnotes omitted).

**30.** *See, e.g., United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 370, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

**31.** 11 U.S.C. § 361; *see also New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.),* 351 F.3d 86, 90 (2d Cir.2003) ("The adequate protection provision of 11 U.S.C. § 361 protects only secured creditors.").

**32.** *Omega Envtl. Inc. v. Valley Bank NA,* 219 F.3d 984, 986 n. 1 (9th Cir.2000) (per curiam) ("A creditor holding an unperfected security interest is not entitled to relief from an automatic stay imposed under Bankruptcy Code § 362."); *First Nat'l Bank of Denver v. Turley,* 705 F.2d 1024, 1027 (8th Cir.1983) (same); *In re Eagle Enters., Inc.,* 265 B.R. 671, 680 (Bankr.E.D.Pa.2001) (same). *Cf. Timbers,* 484 U.S. at 371, 108 S.Ct. 626 (observing that "Section 362(d)(1) is only one of a series of provisions in the Bankruptcy Code dealing with the rights of secured creditors.").

protected by the provisions of Section 362(d)(1) in extraordinary circumstances.[33] The Tenth Circuit has not ruled on this issue. We need not determine which approach is more appropriate because G & B has not established entitlement to adequate protection under either approach.

As set forth more fully above, G & B did not perfect its security interest in the aircraft because all interests in aircraft must be recorded at the FAA's national clearinghouse in Oklahoma City in order to be valid against third parties.[34] Not surprisingly, G & B took no steps to perfect the security interest it did not realize it held.[35] But its failure to perfect its security interest relieves the Trustee from having to show adequate protection of a secured interest.

It also failed to show any "extraordinary circumstances" justifying adequate protection of an unperfected lien. Those courts that have considered granting adequate protection of an unperfected lien have

done so under circumstances that include morally culpable conduct[36] or a showing that the balance of the hardships tip in the creditor's favor.[37] Because G & B did not offer any such evidence, we conclude that the bankruptcy court did not abuse its discretion in denying relief from stay.[38]

### C. Adequate Protection of G & B's Repairman's Lien

■ At the stay relief hearing, G & B also asserted an interest in the planes by virtue of a repairman's lien. The Trustee countered by arguing that continuous possession is mandatory for a repairman's lien. The bankruptcy court agreed with the Trustee. G & B asserts that it maintained continuous possession because, after every flight, the planes returned to a hangar owned and controlled by G & B.

As the bankruptcy court relied on Utah's repairman's lien statute, we turn to that statute. Section 38–2–3 of the Utah Code provides:

---

**33.** *In re Sonnax Indus., Inc.*, 99 B.R. 591, 595 (D.Vt.1989) (an unsecured creditor is not entitled to relief from stay except in extraordinary circumstances), *aff'd*, 907 F.2d 1280 (2d Cir. 1990); *In re Leibowitz*, 147 B.R. 341, 345 (Bankr.S.D.N.Y.1992) (finding that the general rule is that unsecured claims should not be granted relief from stay unless extraordinary circumstances justify such relief); *In re Stranahan Gear Co.*, 67 B.R. 834, 837–38 (Bankr. E.D.Pa.1986) (same).

**34.** *See* 49 U.S.C. §§ 44107, 44108; *Philko*, 462 U.S. at 412–13, 103 S.Ct. 2476.

**35.** Under § 544(a), a Chapter 7 Trustee may avoid liens on the debtor's property that could have been avoided as of the date the bankruptcy petition is filed by a hypothetical lien claimant without notice under applicable law. 11 U.S.C. § 544(a); *Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531, 1532 (10th Cir. 1987). Generally, we would look to state law to determine whether a security interest was properly perfected. *Pearson*, 831 F.2d at 1533. However, as we have previously ob-

served, federal law preempts state law with respect to perfection of interests in aircraft. *State Sec. Co.*, 355 F.2d at 229. Section 544(a), in tandem with the FAA's recording requirements, authorizes the Trustee to avoid unperfected liens on aircraft. 11 U.S.C. § 544; *see also Octagon Gas Sys., Inc. v. Rimmer*, 995 F.2d 948, 955 n. 6 (10th Cir. 1993) ("Accordingly, the trustee prevails over an Article 9 claimant whose interest is unperfected as of the date of filing of bankruptcy.").

**36.** *Sonnax Indus., Inc.*, 99 B.R. at 595.

**37.** *In re U.S. Physicians, Inc.*, 236 B.R. 593, 605 (Bankr.E.D.Pa.1999) (concluding that relief from stay is available to unsecured creditors only if the movant makes a "strong showing" that the "balance of hardships" tips in the movant's favor).

**38.** *Am. Aviation, Inc.*, 427 S.W.2d at 547; *In re Air Vermont, Inc.*, 45 B.R. 820 (D.Vt.1984) (security interest that was not filed with national clearinghouse was not valid against debtor in possession).

Repairman's lien on personal property— Lien subject to rights of secured parties Every person who shall make, alter or repair, or bestow labor upon, any article of personal property at the request of the owner or other person entitled to possession thereof shall have a lien upon such article for the reasonable value of the labor performed and materials furnished and used in making such article or in altering or repairing the same, and may retain possession thereof until the amount so due is paid; provided such lien and right to possession shall be subject and subordinate to the rights and interests of any secured parties in such personal property unless such secured party has requested such person to make, alter or repair or bestow labor upon such property.[39]

The parties have not cited, and this Court has not found, any Utah law determining the degree of possession required to assert a repairman's lien. But, other state statutes with language similar to Utah's statute have been interpreted as requiring continuous possession.[40] The bankruptcy court did not abuse its discretion in considering whether G & B maintained continuous possession of the planes.

G & B asserts in its reply brief that "Mr. Curtis testified that those planes had been within G & B's custody and control at all relevant times."[41] Mr. Curtis actually testified that up until the point that the planes were repossessed, they were being used by UAA.[42] Curtis was later asked: "At the time of the repossession of the five aircraft, were those aircraft lawfully in the possession, custody, and control of G & B?" He answered: "No. They belonged to the club at that point. They were—they were in our possession because we were managing the airplanes."[43] Curtis's testimony could support two possible conclusions. Under one conclusion, G & B maintained possession of the planes because it was the manager of the planes. Under another conclusion, G & B surrendered possession and control of the planes during the time period that they were in use by UAA members, and when the planes were returned to their hangars, those hangars were operated by G & B on behalf of UAA. Not until G & B repossessed the planes

**39.** Utah Code Ann. § 38–2–3 (1977). In 2005, the Utah legislature adopted Utah Code Ann. §§ 38–13–103 to –206 (2005), the Aircraft Lien Act. This Act provides that a repairman may retain possession of the aircraft until the lien is paid, but the repairman "shall file the lien with the Federal Aviation Administration within 90 days of the last day on which the repairman makes, alters, repairs, or performs labor on the aircraft." *Id.* § 38–13–201(3)(a). The repairman must also send notice of the lien to the person against whom the notice of the lien is filed. *Id.* § 38–13–201(4). Thus, possession alone is insufficient to create a valid repairman's lien for liens arising after the enactment of the Utah Aircraft Lien Act. The repairman's lien at issue in this matter predates the adoption of this statute.

**40.** *See In re Lott,* 196 B.R. 768, 775–76 (Bankr.W.D.Mich.1996) (Michigan's statute providing that a mechanic "may retain possession" required continuous possession, based on statutory interpretation and common law background of statute); *United Engine Parts, Inc. v. Ried,* 283 Or. 421, 584 P.2d 275, 279–80 (1978) (same, Oregon statute); *see also Air Ruidoso, Ltd., Inc. v. Executive Aviation Ctr., Inc.,* 122 N.M. 71, 920 P.2d 1025, 1028 (1996) (possessory lien on aircraft released when possession released); *Clifton v. Jones,* 634 S.W.2d 883, 886 (Tex.App.1982) (same); *Church of Bible Understanding v. Bill Swad Leasing Co.,* 2 Ohio App.3d 382, 442 N.E.2d 78, 80 (1981) (same).

**41.** Reply brief at 10.

**42.** *See* Transcript at 62, lines 12–24, *in* Appellant's Appendix at 74.

**43.** *See id.* at 82, lines 9–14, *in* Appellant's Appendix at 88.

did it have exclusive possession and control of the planes. To the extent that Curtis's testimony supports two possible conclusions, the bankruptcy court's choice of one of them cannot be considered an abuse of discretion.[44] The Trustee presented a colorable defense to G & B's claim of a repairman's lien, and the bankruptcy court did not err in denying G & B relief from stay.[45]

The Trustee contends that this Court need not reach the issue of whether G & B maintained continuous possession of the planes, arguing that because G & B's repairman's liens were not recorded with the FAA, the liens are not valid as against third parties. The Trustee's argument has initial appeal. Both *Philko* and *State Securities Co.* include liens in their discussion of interests in aircraft that must be recorded with the FAA,[46] and several courts have held that to the extent a state statute allows perfection of an artisan's lien on aircraft without FAA registration of evidence of the lien, the state law is preempted by the Act.[47] But, it is not clear that the FAA would have accepted evidence of a repairman's lien from a repairman in Utah prior to October 13, 2005.[48] It could be that the FAA recognized that Utah law would govern perfection of artisan's liens during the time period prior to October 13, 2005, or it could be that artisans in the state of Utah had no method of perfecting an artisan's lien on aircraft until October 13, 2005. We need not resolve this issue, as the bankruptcy court did not decide it.[49] The parties will have an opportunity to raise the issue when the Trustee files his adversary proceeding to determine the nature, extent, and validity of G & B's interest in the planes.

**44.** "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

**45.** We hold only that the Trustee presented a colorable defense to G & B's claim of a repairman's lien. We need not determine whether Utah law requires continuous possession in order to assert a repairman's lien or whether G & B maintained continuous possession. The Trustee will need to file an adversary proceeding to determine the nature, extent, and validity of G & B's interest in the planes.

**46.** *Philko*, 462 U.S. at 411, 103 S.Ct. 2476 (The Act creates " 'a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft.' ") (quoting *Hearings Before the H. Comm. on Interstate and Foreign Commerce*, 75th Cong., 3d Sess. 407 (1938) (testimony of F. Fagg, Director of Air Commerce, Dept. Of Commerce)); *State Sec. Co.*, 355 F.2d at 229 ("By providing a federal system for registration of conveyances and liens affecting the title to aircraft, Congress has preempted that field and state recording statutes are not applicable to such title instruments.").

**47.** *Aero Support Sys., Inc. v. FDIC*, 726 F.Supp. 651, 653 (N.D.Tex.1989); *S. Shore Bank v. Int'l Jet Interiors, Inc.*, 721 F.Supp. 29, 33 (E.D.N.Y.1989); *S. Air Transp., Inc. v. Northwings Accessories Corp. (In re S. Air Transp., Inc.)*, 255 B.R. 715, 721 (Bankr. S.D.Ohio 2000); *S. Horizons Aviation v. Farmers & Merchs. Bank*, 231 Ga.App. 55, 497 S.E.2d 637, 639 (1998); *Crescent City Aviation, Inc. v. Beverly Bank*, 139 Ind.App. 669, 219 N.E.2d 446, 448–49 (1966).

**48.** *See* Notice, Legal Opinion as to the Recordability of Artisans' Liens and Identification of Those States From Which Such Liens Will Be Accepted, 46 Fed.Reg. 61528 (Dec. 17, 1981) (FAA will accept filing of artisan's liens only from certain states); Notice, Artisan Liens on Aircraft; Recordability, 70 Fed.Reg. 59800–01 (Oct. 13, 2005) (adding Utah to list as of October 13, 2005).

**49.** *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 722 (10th Cir.1993) (appellate court will not ordinarily address issues not decided by the trial court).

## V. Conclusion

For the reasons stated, we AFFIRM the bankruptcy court's Order denying G & B's request for relief from stay.