## PROVISION FOR SALES OF MERCHANDISE COVERED BY MORTGAGE.

Circuit Court of Stark County.

ASSIGNEE OF J. R. SMITH V. O. C. VOLKMORE.

Decided, February 21, 1910.

*Mortgage of Goods With Right to Sell Reserved by Mortgagor, and Accounting for Proceeds to Mortgagee—Conduct of Parties.*

1. A provision in a chattel mortgage on a stock of merchandise that the mortgagor may make sale of the merchandise in the usual way, making an accounting of such sales to the mortgagee at the end of thirty days, intends that at the accounting the mortgagor shall pay over the proceeds of the sales to the mortgagee, and brings the mortgage within the first paragraph of the syllabus of the case of *Kleine et al* v. *Katzenberger & Co.*, 20 O. S., 111.

2. Notwithstanding such provision in a mortgage of merchandise, it will be considered void as against creditors of the mortgagor, if the circumstances and conduct of the parties shows that such accounting was never acted upon by the parties, or intended to be acted upon.

*D. F. Reinohl,* for plaintiff in error.
*J. W. Albaugh,* contra.

MARVIN, J.; TAGGART, J., and DONAHUE, J., concur.

The facts in this case are briefly as follows: Smith was a merchant doing a small retail business in this county. On the 10th day of December, 1903, he borrowed from Volkmore, $115; on the 6th day of March, 1906, he borrowed the further sum of $274 from Volkmore; on the 20th day of March, 1906, he borrowed the further sum of $245.29; on the 3d day of April, 1906, he borrowed the further sum of $275 from Volkmore, and on the 12th day of May, 1906, the sum of $342. For each of these several loans he gave to Volkmore his promissory note at the time of the loan, to secure the payment of which at the time of the giving of the first note he executed a chattel mortgage on his stock of merchandise and the fixtures in his store. In this first mortgage it was provided that Smith might go on

with the sale of the merchandise in the usual way, making an accounting of such sales to Volkmore at the end of thirty days. Upon the giving of each of the other notes, he executed and gave to Volkmore a chattel mortgage on the stock of merchandise, and each contained the provision that Smith might continue to sell the merchandise in the usual way, making an accounting to Volkmore at the end of sixty days. Nothing was ever paid upon either of the notes, nor was any accounting ever made by Smith to Volkmore of his sales. Smith continued to do business and sell goods from his store in the usual way, up to the 19th day of May, 1906, when he made a general assignment for the benefit of his creditors in the probate court of this county. Volkmore made an application in the probate court for an order upon the assignee to pay him out of the avails of the sale of the property, so assigned, the amount of his several claims, and the court refused to make the order. Thereupon, the case was appealed to the court of common pleas. The result of the trial in that court was an order on the assignee to pay to Volkmore the amount of his several claims, as evidenced by the promissory notes, already mentioned. To this order error is prosecuted here.

On the part of the plaintiff in error it is urged that each of these several chattel mortgages, expressly giving to Smith authority to go on in the usual way and sell the merchandise covered by the mortgage, renders the mortgage void. The general proposition that a chattel mortgage executed upon a stock of merchandise, where the mortgagor is permitted to retain possession of the mortgaged goods and sell the same in the usual course of business, is void, is admitted by the defendant in error, and indeed is so well established by the authorities, that it could not with any force be denied. But it is urged that the provision contained in each of these mortgages that the mortgagor shall account to the mortgagee at a fixed time in each case, takes these mortgages out of the general rule.

So far as Ohio authorities are concerned, the case of *Kleine, Hegger & Co.* v. *L. Katzenberger & Co.*, 20 Ohio St., 111, is relied upon.

The syllabus in that case reads:

"1.    A stipulation in a mortgage of goods, that the mortgagor shall retain possession and sell the goods in the usual retail way, paying over the money received therefor to the mortgagee, as the goods are sold, does not render the mortgage, *per se,* fraudulent and void as against other creditors of the mortgagor. The question of good faith arising upon such stipulation is one of *fact,* for the determination of the jury.

"2.    The true rule is that a chattel mortgage, which reserves to the mortgagor possession, with a power of disposition *for his own benefit,* is void.    This latter qualification must be inserted in the previous cases."

This proposition is not denied by the plaintiff in error, but on his behalf it is urged that the facts here show that it was not the understanding between the mortgagor and the mortgagee that the mortgagor should continue to sell the mortgaged goods and account for such sales to the mortgagee and pay over to him the avails of such sales at stated time.    Indeed, it is urged in argument, that the language used in the stipulation as to accounting, does not include the paying over the money, arising from the sales to the mortgagee.

If this contention is sound, it results that, applying the law as announced in the case just cited, these mortgages are void. But we think a more liberal construction may be given to the words used in the stipulation, and hold that in and of themselves they would constitute a provision that would require of the mortgagor not only to render a statement of his sales to the mortgagee, but to pay over to him the avails of such sales; that all this might fairly be included in a provision that he should account to the mortgagee for such sales.    But from the conduct of the parties in this case we may well infer that neither of them understood that the latter was the construction put upon the contract by them.    The first mortgage was dated in 1903.    No accounting in any sense was ever made under this contract, either by report of sales or by paying over any avails, although the business was continued by the mortgagor for two and a half years or thereabouts, after the execution of the mortgage.

It is urged as a reason why no accounting was ever insisted upon under this mortgage, that it covered not only the merchandise but the store fixtures as well, and that such store fixtures were practically sufficient to secure the indebtedness which this mortgage was given to secure, and that as the fixtures were not to be sold, the mortgagee might safely rely upon his security upon such fixtures, and so safely waive the provision for accounting. As to the others, it is urged that the sixty days had not elapsed between the giving of the last three mortgages and the time of the general assignment; that as to the giving of the mortgage of March 6, 1906, and the time of the general assignment, but little more than sixty days had elapsed, and that the defendant in error called upon Smith several times to make an accounting on that mortgage, but was put off by the statement that he would make such accounting shortly, but was too busy just at the time required by the terms of the contract.

If the mortgagee in good faith intended that the avails of the sale of these goods should be paid to him, it seems very extraordinary that even though sixty days had not elapsed after the giving of the mortgage of March 6, 1906, when he made the loan on March 20, 1906, he should not then have insisted that what had up to that time been received from sales made between the 6th and the 20th of March should be used as a part of the loan of March 20th, 1906. He says that at the time of each loan Smith said to him that he must have the money to pay for merchandise which he had in the store. Smith had no right to use any of the money received from the sale of merchandise for the payment of debts other than to this mortgagee, if the avails of the sales were to go to the mortgagee, and so the natural thing for the mortgagee to have done on the 20th of March, when Smith applied for the loan on that date, was to require of him (Smith) to take what money he had received, and then loan to him such an amount, in addition to that, as would pay the $245.29 of indebtedness, which he said he needed to borrow to pay for merchandise. This same reasoning applies equally to the loan made on the 3d of April, 1906, and applies with much greater force to the loan made on the 12th of May, 1906, because at the

time of this last loan, an accounting was due under the terms of the contract for the loan made on March 6, 1906, more than sixty days having elapsed between these two dates. If Volkmore understood that all the avails of the sale of the goods made after the giving of the mortgage of March 6, were to be applied in payment of the debt secured by that mortgage, it is incredible that he should have loaned Smith $342 after the time when that money was to be paid over to him, without requiring that whatever money had been received for sales should be used as a part of this loan. We regard the conduct of Volkmore as completely negativing the idea that it was the intention of the parties that the avails of the sales should be used in the payment of the notes secured by these several mortgages, and that, therefore, we must hold Smith not only was *not* required, but that it was *never* understood between the parties that he should be required to keep the avails of the sales made by him of these mortgaged goods, to be used for the one purpose of paying off the mortgage debt.

It is said that the amount of business done by Smith was very small; that the amount of money received by him, as he stated to Volkmore, for goods sold, was but a little. It is said further, that all of the money received on these several loans was used by Smith in the payment of debts for this merchandise, but that Volkmore was so informed by Smith at the time of the several loans. Volkmore must have known that it required some money for Smith to support himself and family, and that it must have required some money for Smith to carry on the business, and that if he used all the money that Volkmore loaned to him each time to pay debts upon this merchandise, he must have used some of the money that he received on the sale of the goods for his support and the carrying on of the business. Especially must Volkmore have so understood when Smith reported to him as he says, at each time when he made a loan, that the money received on such loan would pay the debts which he owed, outside of the debt to Volkmore, and then when he came to make another loan, reported that he found he owed other debts which he had overlooked. It will be noticed that he borrowed a larger

amount on the 3d of April than he had borrowed at any one time before then and that the loan of May 12 was considerably in excess of the loan of April 3d.

We reach the conclusion that neither of the parties understood in good faith that the avails of the sales would be devoted strictly and entirely to the payment of the debts undertaken to be secured by these several mortgages, and that therefore, as against the other creditors of Smith, each of the mortgages is null and void, with the exception of the first mortgage covering the fixtures in the store, and that is sustained, to the extent of the avails of the sale by the assignee of the property, included in that mortgage, other than merchandise; and except to this extent, the judgment of the court of common pleas is reversed.