FIRST NATIONAL BANK OF WELLSTON v. PATTON CO. ET AL.

1. DISCHARGE OF INSTRUMENT DISTINGUISHED FROM· DISCHARGE OF IN-
DEBTEDNESS.

Gen. Code 8224 providing that a negotiable instrument is dis-
charged "by its intentional cancellation by the holder," is lim-
ited in its effect to the express provision that the discharge is
of "the instrument," and not of the debt.

2. OPINION OF WITNESS THAT EXECUTION OF NEW NOTE WAS INTENDED TO
EFFECT DISCHARGE OF NOTE CANCELLED EVIDENCING DEBT.

Whether an original debtor was released by the cancellation of
a note evidencing original indebtedness and execution of a new
note to take its place, intention of the parties to treat the orig-
inal debtor as released is not shown by testimony which amounts
to a mere statement of the opinion of the witness as to the effect
of the transaction.

3. OFFER TO RETURN STOCK, ISSUED AS STOCK DIVIDEND WHEN COMPANY
HAD NO DIVIDEND ASSETS, COMES TOO LATE AFTER INSOLVENCY.

Where additional stock is issued as a stock dividend at a time
when the corporation possessed no assets from which a dividend
could be declared, an offer of the stockholders to return the
stock to the company comes too late after the insolvency of the
company has been established and a proceeding has been begun
to enforce stockholders' liability.

ERROR to common pleas court.

*Grosvenor, Jones & Worstel* and *Cobb, Howard & Bailey,*
for plaintiff in error.

*Cobb, Howard & Bailey,* for the International Leather
Company.

*W. D. James,* for T. J. Morgan.

OHIO CIRCUIT COURTS. [Vol.

Hamilton County.

*Prescott Smith,* for J. H. Sellers, W. S. Patton, A. S. Patton and H. H. Patton.

## GIFFEN, P. J.

Although the several causes of action stated in the cross petition of the First National Bank of Wellston, Ohio, were based upon promissory notes executed after the amendment of the constitution of Ohio in relation to the liability of stockholders of a corporation, they are by amended cross petition and amendment thereto based upon the original indebtedness of which the notes are evidence. The chief question presented is whether the notes given for the original indebtedness, or the renewals thereof, constituted a payment of the original debt or debts, so as to remit the bank to an action upon the notes last executed.

The notes were usually made payable sixty days after date, and as each became due a new note was given—the discount paid—the old note marked "paid" and surrendered to the Patton Company.

The cashier of the bank, who is also a stockholder of the defendant, the Patton Company, testified that the notes were understood to be and accepted by the bank as payment of the debts, while other officers of the bank testify that they were mere renewals of old debts; but this kind of testimony aids us little, as the circumstances of each transaction must, in the absence of express agreement, determine its nature. It appears that the notes were marked "paid" when surrendered, in order to prevent their subsequent use, and there was nothing else said or done by the parties at the maturity of any note from which the inference could be drawn that the new note given was intended to be a payment of the original debts, but on the contrary was only a change of the evidence of it. If the time of payment of each original note had been extended at intervals of sixty days and the discount paid, the transaction would differ in form, but not in substance. *Horsey v. Heath,* 5 Ohio 353, 357; *Bank of Cadiz v. Slemmons,* 34 Ohio St. 142 [32 Am. Rep. 364].

Counsel rely also upon a conversation had between Mr.

Bank v. Patton Co.

Sellers, the cashier of the bank, Mr. Morgan, a large depositor, and Mr. H. H. Patton, all being stockholders of the defendant company, and testified to by H. H. Patton, as follows:

"Q.   Now state the conversation, as fully as you can remember, when Mr. Morgan and Mr. Sellers were both present. A.   Mr. Morgan stated that the amendment doing away with the double liability had been adopted and that he wanted the debts of not only the Patton Company but all other companies in which he was interested paid in full and taken up as they became due, without regard to whom they were owed.   After some discussion he remarked, that if it should happen at any time a note or debts became due when we did not have the money, that he had money which he would furnish us to complete the payment.

"Q.   Well, now, what did Mr. Sellers say to that?   A.   I don't remember what he said, any more than he agreed with Mr. Morgan that the indebtedness should be paid."

This agreement, if any, contemplated the payment in money of the indebtedness as it became due, and if the Patton Company or Mr. Morgan wished to do so, it was unnecessary to have the consent of the cashier.   Sellers testifies concerning the same conversation as follows:

"Q.   Well, now state what that conversation or agreement was?   A.   Mr. Morgan came to me with Mr. Patton, and he seemed to be worked up some way over the amount of the indebtedness of the Patton Company, all told, and said he was not going to let it stand any longer, that I knew he was able to liquidate that indebtedness and he would do it, if there was going to be any personal liability in this matter.

"Q.   Well, did you say anything to him?   A.   I told him there would not be any personal liability in the matter.   I told him that the transaction in the bank was complete; when a note was paid it was considered a complete liquidation of the old note, and the bank looked entirely to the new note."

As we understand this testimony it is simply an opinion of the witness of the effect of a past transaction, and in many respects is sound; but it is not evidence of a contract to release

Mr. Morgan from liability on the original indebtedness, nor is it evidence of the intention of the parties at the time the notes were discounted. It is further claimed that by force of Gen. Code 8224, which provides that "a negotiable instrument is discharged by the intentional cancellation thereof by the holder," the debt was paid when the note was intentionally marked "paid" by the bank. That would be true in the absence of any other circumstance; but when a new note is given at the time the old one is canceled and the cancellation is made for the purpose of avoiding the subsequent use of the old note, the effect of the statute is limited to the express provision a "discharge of the instrument" and not of the debt.

The action against the stockholders was not barred. *Bronson* v. *Schneider*, 49 Ohio St. 438 [33 N. E. Rep. 233].

It is claimed by the stockholders of the Patton Company that they should not be held liable on the additional stock of the company issued to them on June 1, 1903, as a stock dividend, upon the ground that the value of the stock thus issued had been earned by the company, and if the court should find otherwise, then it was a fraud upon them and they tender back the stock. The evidence shows no assets from which the dividend could be declared, and the offer to now return the stock is too late. *Clarke* v. *Thomas*, 34 Ohio St. 46; *Chubb* v. *Upton*, 95 U. S. 665 [24 L. Ed. 523].

It follows therefore that the court erred in setting aside the findings of fact and conclusions of law of the referee relating to the statutory liability of the stockholders, and the judgment in their favor is reversed and a decree may be entered in accordance with the findings of the referee, and in so far as the judgment confirms the report of the referee it is affirmed.

Smith, J., concurs.

Swing, J., dissents.