**In re Ronald James HOLLAND, Mary Louise Holland, Debtors.**

**Ronald James HOLLAND, Mary Louise Holland, Plaintiffs,**

v.

**ASSOCIATES FINANCE, et al., Defendants.**

Bankruptcy No. 80–00967.
Adv. No. 80–0252.

United States Bankruptcy Court, N. D. Ohio, W. D.

Dec. 14, 1981.

**84**

Samuel G. Bolotin, Toledo, Ohio, for plaintiffs.

George Gusses, L. Mari Taoka, Toledo, Ohio, for defendant Thorp Credit Inc. of Ohio.

## MEMORANDUM AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on to be heard upon the Debtors' (Plaintiffs) complaint to avoid a lien pursuant to 11 U.S.C., § 522(f). The sole determinative issue is whether the renewal or refinancing of the Debtors' obligation under a previous transaction creating a purchase money security interest had the effect of destroying the purchase money character of the Defendant's security interest thereby subjecting it to avoidance under § 522(f)(2). Under the circumstances of this case, this Court holds that the Defendant's security interest retained its purchase money character and therefore is not subject to avoidance under the Bankruptcy Code.

This case was submitted to the Court upon an agreed stipulation of facts. On or about November 14, 1978 Defendant, Thorp Credit Inc. of Ohio, acquired a purchase money security interest in certain household goods of Debtors by virtue of a certain retail installment contract. On or about January 18, 1980, at Debtors' request, the Defendant refinanced the obligation under the prior transaction so that the monthly installments owed to Defendant would be smaller in amount. Under the refinancing arrangement the old note and security agreement were cancelled and a new note and security agreement were executed. No additional sums of money were advanced to Debtors nor was any additional collateral taken as security. The January 18, 1980 security agreement stated that "all items purchase money security interest". The existence of Defendant's lien impairs exemptions to which Debtors would otherwise be entitled to under § 2329.66 of the Ohio Revised Code up to the full amount of their value.

Plaintiffs' contention is that the refinancing should have the effect of destroying the purchase money character of Defendant's security interest based upon the definition and accompanying Official Comment on "purchase money security interest" found in § 9–107 of the Uniform Commercial Code (§ 1309.05 Ohio Revised Code). Section 9–107 provides as follows:

A security interest is a 'purchase money security interest' to the extent that it is:

(A) taken or retained by the seller of the collateral to secure all of [or] part of its price; or

(B) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Paragraph 2 of the Official Comment provides:

When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This section therefore provides that the purchase money party must be one who gives value 'by making advances or incurring an obligation': the quoted language excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt.

Plaintiffs argue that the *refinancing* did not secure all or part of the price of the collateral nor did it enable the Debtor to acquire rights in or use of the collateral. In addition, Plaintiffs contend, relying on Official Comment 2, that the security interest cannot be purchase money since it was taken as security for or in satisfaction of a pre-existing claim or antecedent debt. Defendant counters that the refinancing, the purpose of which was to accommodate the Debtors'/Plaintiffs' request to reduce the agreed upon monthly payments, should not destroy the stipulated purchase money character of the security interest it obtained in the November 14, 1978 transaction and points out that this case does not involve circumstances where the collateral secures something other than its purchase price.

*Roberts Furniture Co. v. Pierce (In re Manuel)*, 507 F.2d 990 (5th Cir. 1975), was a proceeding under the Bankruptcy Act wherein the seller of goods sought reclamation on the basis of the priority of an alleged purchase money security interest. The debtor had previously purchased household furniture and failed to pay off the entire indebtedness under a transaction creating a purchase money security interest. The debtor subsequently purchased a television set from the same seller and a new security agreement provided, among other things, that the seller would retain its security interest in the previously purchased household furniture until all present and future obligations were paid.

Citing the Uniform Commercial Code definition of a purchase money security interest, the Court held a purchase money security interest must be in the item purchased and cannot exceed the price of the item purchased wherein the security interest was created. *In re Manuel, supra*, at 993. Since the seller attempted to make collateral secure debt other than its own price, the Court held, the purchase money character of the security interest taken in the furniture was destroyed. *Id.* The Court noted there was no first-bought, first-paid for method of allocation of payments under the security agreements involved.. *Id.*

The Georgia Courts followed the lead of *Manuel* in two subsequent cases. *W. S. Badcock Corp. v. Banks (In re Norrell)*, 426 F.Supp. 435, 436 (M.D.Ga.1977) declared a security interest nonpurchase money since collateral secured indebtedness other than its own price. In *Goodyear Tire and Rubber Co. v. Staley (In re Staley)*, 426 F.Supp. 437 (M.D.Ga.1977), however, the Court refused to apply the *In re Manuel* holding. *In re Staley* involved a security agreement providing for a first-bought, first-paid for apportionment of payments. Since the security interest by the explicit terms of the agreement was to terminate as soon as the purchase price of the property involved was paid, notwithstanding the granting of a security interest in items subsequently purchased, the Court held the security interest to be purchase money. 426 F.Supp. at 438.

Following or along similar lines to *In re Manuel, supra*, a whole host of bankruptcy court decisions considering the effect of "add-on" clauses and/or consolidations have held that, absent explicit language in the security agreement or applicable statutory authority requiring a "first-in, first-out" principle in allocating payments, if consumer goods secure any price other than their own, the security interest in those goods is nonpurchase money. *See, e.g., Landaus of Plymouth, Inc. v. Scott (In re Scott)*, 5 B.R. 37 (Bkrtcy.M.D.Pa.1980); *McLemore v. Simpson County Bank (In re Krulik)*, 6 B.R. 443 (Bkrtcy.M.D.Tenn.1980); *Coronado v. Beach Furniture and Appliance, Inc. (In re Coronado)*, 7 B.R. 53 (Bkrtcy.D.Ariz.1980); *Buchanan v. Leader Furniture Co. (In re Buchanan)*, 10 B.R. 846 (Bkrtcy.S.D.Ohio

1981); *Sims Furniture Co. v. Trotter (In re Trotter)*, 12 B.R. 72 (Bkrtcy.C.D.Cal.1981).

The purchase money character of Defendant's security interest should not be extinguished through application of the rule of *In re Manuel*. The household goods involved in this case never served as collateral for anything but their purchase price both prior to and subsequent to the refinancing. Upon refinancing there were no further advances under the new note and security agreement and no additional collateral was taken.

*Mulcahy v. Indianapolis Morris Plan Corp. (In re Mulcahy)*, 3 B.R. 454 (Bkrtcy.S. D.Ind.1980) and *In re Jones*, 5 B.R. 655 (Bkrtcy.M.D.N.C.1980) are similar cases but more favorable to Plaintiff's position. In *Mulcahy* the seller of certain living room furniture under a retail installment contract assigned his rights for value to the Morris Plan. To finance a subsequent purchase of bedroom furniture the Mulcahys executed a promissory note and security agreement in favor of Morris Plan. The loan proceeds were used to pay off the retail installment contract on the living room furniture, to pay the seller the price of the newly acquired bedroom furniture, and to pay sums owing to two other creditors. A financing statement was filed. The Court interpreted a stipulation between the parties to be a settlement in regard to the bedroom furniture but held that the purchase money security interest in the living room furniture to have been extinguished by the paying off of the retail installment contract assigned to Morris Plan. 3 B.R. at 456.

Citing *In re Manuel* and a group of similar cases the Court went on to hold that, apart from the refinancing, the security interest in the living room furniture could not have been purchase money since the consumer goods secured a price other than their own and there was no provision in the security agreement covering application of payments. 3 B.R. at 457. The Court then analyzed the provisions of the Indiana version of the Uniform Consumer Credit Code, Ind.Code § 24–4.5–1–101 et seq., and con-

cluded that it provided that payments received in cross-collateralized consumer credit sales are to be applied to the indebtedness in a first-in, first-out basis. Accordingly, the security interest in each item would terminate as its price was paid off, thereby mitigating the possible unconscionable impact of such agreements. 3. B.R. at 458. The Morris Plan, however, an unrelated assignee, was found to be excluded from the coverage of the statute and, as a result, there being no provision for the application of payments in that case the security interest was nonpurchase money under *In re Manuel*.

In *In re Jones, supra*, the debtors borrowed money from the creditor in August of 1974 for the purpose of purchasing a garden tractor and mower assembly. The proceeds from the loan were paid directly to the retail seller, the creditor taking a promissory note and security interest in the items purchased. At this point, the purchase money character of the lien on the goods involved was uncontested.

The Court described the subsequent history of the case as follows:

On four occasions thereafter, the last such occasion being February 27, 1980, the Debtors and the creditor refinanced or 'flipped' the account in order to cure a delinquency and bring the account current. Each refinancing resulted in the opening of a new account with the old account being marked 'paid by renewal'. The refinancing resulted in the execution of new Promissory Notes which contained variations from the old Notes in the amounts financed, interest rates, payment amounts, payment numbers, and the total of payments. *Each renewal note retained the identical collateral used to secure the refinanced note and advanced a sum of additional money.* The sums advanced plus the amounts used to payoff the prior note never exceeded the sums of the original obligation to Sun-American Financial Corporation. The lender considered the prior Promissory Note as paid in full and discharged upon

the Debtor's execution of the renewal note. (emphasis added).

5 B.R. at 656.

After expressing the view that a security agreement which contains a future advance clause which uses the collateral to secure debt other than its purchase price was sufficient in itself to extinguish the purchase money character of the security interest the Court continued:

It is unnecessary for this Court to hold that the future advance clause destroys the purchase money character of the security interest since the refinancing alone extinguishes the purchase money character of the security interest. As previously stated, neither the cash advances nor the renewal note enabled the Debtor to acquire rights in the collateral. The purpose of the renewal note was to payoff the original note, an antecedent debt. The purchase money character of the security interest was extinguished when the proceeds from the first renewal note were used to satisfy the original note.

5 B.R. at 657.

The Court then cited Official Comment 2 of U.C.C. § 9–107 and concluded that "[t]he renewal note which was accepted by the lender in the refinancing of the original note was accepted in satisfaction of an antecedent debt. Therefore, the security interest held under the renewal note is nonpurchase money security interest and is avoidable under 11 U.S.C. § 522(f)." *Id.*

Under a strict reading of *Mulcahy* and *Jones* this Court would be forced to hold that, in the present case, the refinancing of the November 14, 1978 obligation on January 18, 1980 had the effect of extinguishing the purchase money character of the security interest. A closer look at these decisions, however, militates against such a result.

The security interests in *Mulcahy* and *Jones* were both subject to the rule of *In re Manuel.* Indeed the Court in *Mulcahy* specifically applied the *In re Manuel* rule in holding the security interest in that case nonpurchase money, seemingly placing its emphasis on that aspect of its decision. *Jones* was more explicit in expressing the

basis for its view that refinancing alone would change the security interest from purchase money to nonpurchase money. The Court there relied upon the Official Comment 2 of U.C.C. § 9–107 holding that the, refinancing of the note was accepted in satisfaction of an antecedent debt. 5 B.R. at 657. As noted earlier, however, in addition to refinancing in *Jones*, each renewal involved an advance of additional money causing the collateral to be security for indebtedness other than its purchase price.

As another Court noted discussing both *Jones* and *Mulcahy*, the Court in *Jones* did not discuss whether the lender might have been treated as the successor to its purchase money rights. *See Slay v. Pioneer Credit Co. (In re Slay)*, 8 B.R. 355, 357 (Bkrtcy.E.D.Tenn.1980): *See also Coomer v. Barclays American Financial Inc. (In re Coomer)*, 8 B.R. 351 (Bkrtcy.E.D.Tenn.1980). The Court, looking strictly to the form of the transaction, reasoned that it was not a combination or continuation but a new loan. *See Slay, supra* at 357. A close look at the case law in Ohio, in contrast, convinces this Court that, in the present case, the indebtedness underlying the purchase money loan was never extinguished and hence, the original obligation continuing, there is no antecedent debt.

It is well settled in Ohio that renewals of notes, or changes in the form of the evidence of a precedent debt, do not create a new debt, or operate as a discharge or satisfaction of the old debt, unless it is expressly agreed between the parties. *Hauenschild v. Standard Coffin Co.*, 10 Ohio Dec. 536, 8 Ohio N.P. 124, 124–125 (Super.Ct.Cincinnati, 1900). *See also, Beals v. Lewis*, 43 Ohio St. 220, 1 N.E. 641 (1885); *First National Bank v. Patton Co.*, 13 Ohio C.C. (n.s.) 289, 32 Ohio C.C. Dec. 627 (Hamilton County Cir.Ct.1910). *Cf., In re Wyse Laboratories, Inc.*, 55 Ohio Law Abst. 321, 323 (S.D.Ohio 1949); *Madlener v. Greathouse*, 31 Ohio Law Abst. 434, 439 (Montgomery County Ct.App.1939); 40 O.Jur.2d 300, Negotiable Instruments and other Commercial Paper, § 247. The presumption is that it is a conditional, not an absolute, payment of the

obligation. *Madlener, supra* at 439; *Kuerze v. Western German Bank*, 12 Ohio App. 412 (Hamilton County Ct.App.) *aff'd*, 100 Ohio St. 547, 127 N.E. 924 (1919). Furthermore, one Court has held the evidence must affirmatively and clearly show such to have been the agreement of the parties. *Hauenschild v. Standard Coffin Co., supra* 10 Ohio Dec. at 536, 8 Ohio N.P. 124.

There is no evidence of an intention of the parties in this case that the January 18, 1980 note was payment, satisfaction, or discharge of debt evidenced by the note of November 14, 1978. Such an agreement, if it was in evidence, would have effected a novation wherein the original debt was extinguished and the new note taken in substitution. *See* 17 O.Jr.3d, Contracts, §§ 283–295. The evidence in this case shows that there was no intention to effect a novation and, consequently, the note taken on January 18, 1980 was merely a renewal of the November 14, 1978 obligation.

The preceding analysis leads this Court to the conclusion that the transaction in this case was a continuation of the obligation created on November 14, 1978. Defendant, under this view continues to hold a purchase money security interest it took in the first instance. The terms of 11 U.S.C. § 522(f)(2) allow the lien to be avoided only if it is nonpurchase money. Defendant having maintained its purchase money status, it is hereby;

ORDERED that the lien on the household goods cannot be avoided under 11 U.S.C. § 522(f)(2) and that Plaintiffs' complaint against Thorpe Credit Inc. of Ohio be, and it hereby is, dismissed.