In re D & K AVIATION, INC., Debtor.

Thomas R. Noland, Trustee, Plaintiff,

v.

Wilmington Savings Bank, Defendant.

Bankruptcy No. 03–38974.
Adversary No. 05–3060.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Sept. 1, 2006.

---

Mitchell W. Allen, Lebanon, OH, Richard M. Haines, Cincinnati, OH, for Debtor.

Thomas R. Noland, Dayton, OH, pro se.

### DECISION DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

LAWRENCE S. WALTER, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This matter is before the court on the motion for partial summary judgment filed by Plaintiff Trustee Thomas R. Noland [Adv. Doc. 36]; the responsive memorandum filed in opposition by Defendant Wilmington Savings Bank [Adv. Doc. 45]; and Plaintiff's reply memorandum [Adv. Doc. 64].

The Trustee seeks to avoid a prepetition security interest held by Wilmington Savings Bank in the Debtor's 3/8th interest in an airplane and to avoid and recover postpetition payments on the secured debt. Essentially, the Trustee alleges that a postpetition loan transaction between the Debtor, the Debtor's principals, and Wilmington Savings Bank was not a renewal or consolidation of the secured prepetition obligation, but was a new distinct loan or novation that paid off the prepetition loan and consequently released the security in-

terest. Further, the Trustee argues that the loan documents themselves manifest the parties' intent to create a new loan and that the parol evidence rule prevents any extrinsic evidence to the contrary.

The court determines that the parol evidence rule is inapplicable and that there remain genuine issues of material fact, particularly with respect to the intent of the parties. Therefore, the Trustee's motion for partial summary judgment must be denied.

### FACTUAL BACKGROUND

The parties have filed an "Agreed Stipulation of Facts" [Adv. Doc. 44] as well as an "Agreed Stipulation" [Adv. Doc. 34] pertaining to the admissibility of numerous documents. These stipulated facts together with the content of the documents provide the primary factual basis for the court's decision, supplemented by uncontested facts contained in various pleadings and schedules in the record. A summary of those facts, organized chronologically, is set forth below.

D & K Aviation, Inc. ("D & K")[1], a Delaware corporation, is the debtor and defendant in this proceeding. More than three years prior to its chapter 11 bankruptcy filing, D & K executed and delivered to Wilmington Savings Bank ("WSB") a "HomeLine" Note dated July 19, 2000, bearing account number 70253411, in the principal amount of $2,100,000.00, with an interest rate of 9.5% per annum, and a maturity date of July 19, 2003 ("Note 411"). Lee F. Webb, the principal shareholder and treasurer of D & K, signed a personal guaranty of Note 411. The proceeds of Note 411 were to purchase a 3/8th

interest in an airplane. Consequently, on the same date, D & K also executed a Security Agreement (the "411 Agreement") identifying a "Cessna Citation Bravo FAA Registration # N417KW, Aircraft Serial # 550–0933" (the "Airplane") as the collateral securing repayment of Note 411. D & K also executed an Aircraft Security Agreement dated July 19, 2000 which was properly recorded[2] with the Federal Aviation Administration ("FAA"). This lien was not released until D & K's interest in the Airplane was subject to an Agreed Order entered November 24, 2004 [Case Doc. 156] to sell the Airplane pursuant to § 363(f) of the Bankruptcy Code.

D & K also executed and delivered to WSB a "Universal" Note dated August 1, 2000, bearing account number 70553445, in the principal amount of $400,000.00, with an interest rate of 9.75% per annum, and a maturity date of December 1, 2000 (later extended to July 15, 2001) ("Note 445"). The note was guaranteed by Lee F. Webb but was otherwise unsecured.

Lee Webb and his wife, Janet Webb (the "Webbs"), personally borrowed $200,000.00 from WSB as evidenced by a "Home Equity Line of Credit" note dated March 20, 2002, bearing account number 70254807, with interest charged at the prime rate, and a maturity of April 26, 2012 ("Note 807"). This note was secured by a properly recorded "Open–End Mortgage" on the Webbs' residence located at 331 Todd's Ridge Road, Wilmington, Ohio.

D & K filed its petition under chapter 11 of the Bankruptcy Code on October 14, 2003 (the "D & K Bankruptcy"). No cash collateral order was ever entered in the case in favor of WSB. A chapter 11 plan was proposed but not confirmed, and the

---

1. For consistency and clarity, the Court shall adopt the same abbreviations used by the parties in their stipulations.

2. The parties have stipulated that the Aircraft Security Agreement was properly recorded, and the Trustee has not otherwise alleged that WSB's security interest in the Airplane relative to Note 411 was not properly perfected.

case was converted to a case under chapter 7 on August 18, 2004. WSB filed two proofs of claim in the bankruptcy case on February 3, 2004. One cited Note 411 with a balance due of $2,098,020.05 secured by the Airplane. The other cited Note 445 with an unsecured balance of $252,70.20.

Of particular importance to this case is another "Home Equity Line of Credit" note executed and delivered to WSB by the Webbs subsequent to the filing of the D & K Bankruptcy. This note was dated February 7, 2004, bore account number 71250002, had a credit limit of $2,650,000, charged interest at the prime rate plus two percent per annum but never lower than six percent per annum, and had a maturity date of February 12, 2007 ("Note 002"). D & K was neither an obligor nor guarantor of Note 002. However, Lee F. Webb, signing on behalf of D & K in his capacity as treasurer of the corporation, executed and delivered to WSB a "Commercial Security Agreement" dated February 7, 2004 specifying the Airplane as security for Note 002 (the "002 Agreement"). The 002 Agreement was not filed or registered with the FAA and no FAA form "Aircraft Security Agreement" was executed with respect to Note 002.

The Airplane was not the only collateral referenced by the 002 Agreement. In fact, both Note 002 and the 002 Agreement contain specific references to "Exhibit A" and "Exhibit B" as containing descriptions of the property serving as security. The exhibits attached to each document are identical. Exhibit B is merely a legal description relative to one of the items listed on Exhibit A. Exhibit A, fully transcribed below, purports to describe all of the security for Note 002:

EXHIBIT A

SECURITY DESCRIPTIONS

PROPERTY 1: 311 TODDS RIDGE ROAD, WILMINGTON, OHIO 45177

PROPERTY 2: 7949 HICKORY AVENUE, RUSSELLS POINT, OHIO 43348

SECURITY: ASSIGNMENT OF MORTGAGE AT 1665 WEST MAIN STREET, WILMINGTON, OHIO, MORTGAGE RECORDED AT VOLUME 222, PAGE 342, OFFICIAL RECORDS, CLINTON COUNTY, OHIO RECORDER, DATED FEBRUARY 7, 1997

SECURITY: ASSIGNMENT OF LEASE AT A SPECIFIC HANGAR AT CLINTON COUNTY REGIONAL AIRPORT AUTHORITY, 1581 NORTH CURRY ROAD, WILMINGON, OHIO, LEASE RECORDED AT VOLUME 276, PAGE 268, OFFICIAL RECORDS, CLINTON COUNTY, OHIO RECORDER, DATED FEBRUARY 27, 2002, SEE "EXHIBIT B" FOR LEGAL DESCRIPTION.

SECURITY: UNDIVIDED 3/8 OWNERSHIP, CESSNA CITATION BRAVO 550, FAA REGISTRATION # N417KW, AIRCRAFT SERIAL # 550–0933

SECURITY: UNDIVIDED 3/8 OWNERSHIP, ENGINE—LEFT—PRATT-WHITNEY, MODEL PW530A, SERIAL # PCE–DA0280

SECURITY: UNDIVIDED 3/8 OWNERSHIP, ENGINE—RIGHT—PRATT-WHITNEY, MODEL PW530A, SERIAL # PCE–DA0278

REFERENCE: ORIGINAL SECURITY AGREEMENT ON CESSNA CITATION, DATED JULY 19, 2000, BY D & K AVIATION, INC. AND NEW COMMERCIAL SECURITY AGREEMENT DATED FEBRUARY 12, 2004

Mortgages and assignment documents were executed on or shortly after February 7, 2004 and subsequently recorded to perfect WSB's interests in these additional items of security for Note 002. One piece of collateral was not included on "Exhibit A." On July 20, 2004, the Webbs granted WSB a security interest in their 2003 Dutch Star Motor Home which was likewise properly documented and certified as a lien under Ohio law.

In conjunction with the Note 002 closing, the Webbs executed a settlement

statement dated February 12, 2004 ("Settlement Statement"). The Settlement Statement appears to indicate that the proceeds of Note 002 were applied to "payoff" the balances of Note 411, Note 445, and Note 807. Beginning March 16, 2004, five monthly checks aggregating $56,036.03 were written on the D & K debtor in possession account payable to WSB and were applied to payment of Note 002.

## SUMMARY JUDGMENT STANDARD

The appropriate standard to address the Trustee's motion for summary judgment filed in this adversary proceeding is contained in Fed.R.Civ.P. 56(c) and incorporated in bankruptcy adversary proceedings by reference in Fed. R. Bankr.P. 7056. Rule 56(c) states in part that a court must grant summary judgment to the moving party if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden is on the nonmoving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim; or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–32, 106 S.Ct. 2548. Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 586–88, 106 S.Ct. 1348.

## LEGAL ANALYSIS

### Choice of Law

Generally, property interests are defined by state law, so the court must necessarily look to state law to interpret the various notes and agreements central to this matter. *See, Nobelman v. American Savings Bank*, 508 U.S. 324, 329–330, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Federal Aviation Act governs perfection of a security interest in aircraft and other matters regarding registration and recording of title instruments, but does not pertain to determination of the construction or validity of loan and security documentation. *See* 49 U.S.C. §§ 44101–44113; *In re Utah Aircraft Alliance*, 342 B.R. 327, 334 n. 21 (10th Cir. BAP 2006) (and cases cited therein); *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.*, 570 F.2d 1220, 1224 (5th Cir.1978). The parties have not addressed the issue of which state's laws apply, but all of the significant indicia point to Ohio law. D & K is a Delaware corporation located and doing business in Ohio; WSB is located in Ohio; all of the loan transactions occurred in Ohio; and all of the loan documents containing choice of law provisions either directly or indirectly specify Ohio law. Consequently, the court will look to Ohio law in interpreting the loan transaction in this case.

### Renewal or Novation?

■■ In the Trustee's view, Note 002 was the product of a new transaction; it was a new independent note, the proceeds of which were intended by the parties to pay off Note 411 which in turn extinguished WSB's security interest in the Airplane because it was specific to Note 411. The Trustee separately argues that this new Note 002 transaction constituted a novation because the Webbs were substituted for D & K as obligors. But under the facts of this case, the concept of novation adds nothing to the analysis and is in effect the same argument with a different name. A novation occurs "where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration." *McGlothin v. Huffman*, 94 Ohio App.3d 240, 640 N.E.2d 598, 601 (1994). As the Trustee correctly notes, a novation requires the clear and definitive intent of the parties to extinguish the former obligation and substitute the new one. *Citizens State Bank v. Richart*, 16 Ohio App.3d 445, 476 N.E.2d 383, 385 (1984); 11 Am.Jur.2d Bills and Notes § 398. So, in effect, the Trustee is arguing that the parties either intended to satisfy the Note 411 obligation from the proceeds of Note 002 or intended to substitute Note 002 (and the Webbs as obligors) for Note 411, both of which would have the effect of extinguishing any obligation under Note 411.

Semantics aside, ascertaining the intent of the parties is the crux of this matter.[3] WSB vehemently asserts that Note 002 was not a new note or a substituted note intended by the parties to extinguish the earlier note, but was merely a renewal of Note 411, part of a consolidation of various loans to D & K and the Webbs.

■ It is a fundamental commercial principle that satisfaction of an underlying debt extinguishes the corresponding security interest. *See* Ohio Rev.Code Ann. § 1309.203 (requiring "value" to be given for a security interest to be enforceable); Ohio Rev.Code Ann. § 1309.513 (requiring secured party to file termination of financing statement where the collateral no longer secures an obligation); *Bank of Lexington*, 570 F.2d at 1225 ("A security interest ... has no validity absent its underlying obligation; the satisfaction of that obligation extinguishes the security interest."); *In re Spaniak*, 221 B.R. 732, 735 (Bankr. W.D.Mich.1998) ("When a debt is extinguished, an attendant security interest is also extinguished."); *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240, 1245 (6th Cir.1989); *Rozen v. North Carolina Nat. Bank*, 588 F.2d 83, 86 (4th Cir.1978).

It is also fundamental and undisputed that the Trustee has the statutory power to avoid unperfected or improper security interests under 11 U.S.C. § 544, recover for the benefit of the estate such avoided transfers under 11 U.S.C. § 550, and obtain disallowance of the claim of a creditor that is liable for an avoided transfer under 11 U.S.C. § 502(d). The only real issue in contention here is whether the underlying debt has indeed been satisfied or otherwise extinguished.

■ The Trustee's primary argument is that, without a clear manifestation by the parties that the first note, Note 411, was to be renewed, the payment of that loan with the proceeds of a separate loan is decisive evidence that the parties have extin-

---

**3.** Because the Trustee's alternate arguments are so closely aligned as to be inseparable, being based on precisely the same facts, the court for convenience will generally refer to them jointly as "novation" or the "novation issue."

guished the first obligation.[4] That clear manifestation, according to the Trustee, must appear exclusively in the loan documents themselves. In that regard, the Trustee cites *Harder v. United States,* 1993 WL 667770 (D.Mass. Aug.18, 1993).

The *Harder* court correctly noted that it is the "manifest intent" of the parties that generally determines whether a new loan transaction discharges a prior debt and its corresponding security, or is merely a renewal of the original debt that retains the same security. *Id.* at *7. It then examined a number of cases with facts "indistinguishable" from that before the court and concluded that a determination that the first obligation is extinguished rather than renewed is compelled where there is absolutely no manifestation to the contrary:

> These cases together stand for the proposition that paying off a first loan with the proceeds of a second, without any manifestation that the parties intended simply to renew the first, is decisive evidence that the parties have extinguished the first obligation. The courts treated the transactions themselves, and not later subjective statements by the parties as to prior state of mind, as dispositive of intent.

*Id.* at *8.

In the *Harder* case, and the cases it cites for purposes of comparison, the court found virtually no evidence derived from the loan documents or transaction to support the notion that a renewal was intended. In addition, there was some evidence in each case that the parties intended to extinguish the earlier obligation. Of particular significance in *Harder* was the fact that the lender had cancelled the original note. *Id. See also, Peterson v. Crown Financial Corporation,* 661 F.2d 287, 292 (3rd Cir.1981) (fact that bank cancelled and returned original note is determinative of intent to extinguish obligation; evidence of subjective intent precluded). Under the Uniform Commercial Code effective in most states, cancellation of an instrument is an effective discharge of the underlying obligation. *See, e.g.,* Ohio Rev.Code Ann. § 1303.69 (UCC 3–604)[5]; *Huntington National Bank v. Mark,* 2004 WL 1627029, at *2 (Ohio Ct.App. July 14, 2004); *Kinney v. Columbus Temperature Control Co.,* 2 Ohio App.3d 396, 442 N.E.2d 465, 466 (1981). The facts before the *Harder* court clearly compelled its decision.

■ In a commercial context, great deference must be given to the documents the parties have executed and the manifestations of intent observable from the transaction itself rather than subsequent statements as to subjective intent. *Safe*

---

**4.** Additionally, the Trustee emphasizes that D & K failed to comply with federal regulations mandating the release of its security interest filed with the FAA. This argument begs the question. The obligation to release the documented security interest is in no way probative of the satisfaction of the underlying obligation, but presupposes it.

**5.** Ohio Rev.Code Ann. § 1303.69 reads as follows:

**1303.69 Discharge by cancellation or renunciation**

(A) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument in either of the following ways:
(1) By surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, the addition of words to the instrument indicating discharge, or any other intentional voluntary act;
(2) By agreeing not to sue or otherwise renouncing rights against the party by a signed writing.
(B) Cancellation or striking out of an indorsement pursuant to division (A) does not affect the status and rights of a party derived from the indorsement.

*Deposit Bank and Trust Co. v. Berman,* 393 F.2d 401, 404 (1st Cir.1968) ("In a commercial world dependent upon the necessity to rely upon documents meaning what they say, the explicit recitals on forms, without requiring for their correct interpretation other documents not referred to, would seem to be a dominant consideration."); *Harder,* 1993 WL 667770, at *9 ("Insistence on giving formalities dispositive significance is salutary in the commercial world."); *Peterson,* 661 F.2d at 292. To the extent that these objective manifestations of intent are unequivocal as in the *Peterson* or *Harder* cases, then the intent of the parties may be determined as a matter of law without resort to further evidence.

 However, the general rule of construction is not, as suggested by the Trustee, that intent must always be exclusively derived from the documents. Generally, courts determine whether the parties intended a new note to extinguish a prior note by analyzing the facts and circumstances surrounding the transaction. *In re Wyse Laboratories, Inc.,* 55 Ohio Law Abs. 321, 1949 WL 6591, at *2 (S.D.Ohio July 14, 1949); *Peterson,* 661 F.2d at 291; *In re Lambert Enterprises, Inc.,* 21 B.R. 529, 530 (Bankr.Va.1982). Such an intention is not presumed and the party alleging the extinguishment has the burden of proof. *Peterson,* 661 F.2d at 291.

 Ohio law goes a step further in that it provides for a presumption in favor of renewal where a new note has been executed by the parties. *In re Holland,* 16 B.R. 83, 87–88 (Bankr.N.D.Ohio 1981); *Madlener v. Greathouse,* 31 Ohio Law Abs. 434, 439, 1939 WL 3309 (Ohio Ct.App. 1939). The *Holland* decision contains a particularly comprehensive recitation of Ohio case law on this point:

It is well settled in Ohio that renewals of notes, or changes in the form of the evidence of a precedent debt, do not create a new debt, or operate as a discharge or satisfaction of the old debt, unless it is expressly agreed between the parties. *Hauenschild v. Standard Coffin Co.,* 10 Ohio Dec. 536, 8 Ohio N.P. 124, 124–125[, 1900 WL 1249] (Super.Ct.Cincinnati, 1900). See also, *Beals v. Lewis,* 43 Ohio St. 220, 1 N.E. 641 (1885); *First National Bank v. Patton Co.,* 13 Ohio C.C. (n.s.) 289, 32 Ohio C.C. Dec. 627[, 1910 WL 663] (Hamilton County Cir.Ct.1910). Cf., *In re Wyse Laboratories, Inc.,* 55 Ohio Law Abst. 321, 323[, 1949 WL 6591] (S.D.Ohio 1949); *Madlener v. Greathouse,* 31 Ohio Law Abst. 434, 439[, 1939 WL 3309] (Montgomery County Ct.App.1939); 40 O.Jur.2d 300, Negotiable Instruments and other Commercial Paper, s 247. The presumption is that it is a conditional, not an absolute, payment of the obligation. *Madlener,* supra at 439; *Kuerze v. Western German Bank,* 12 Ohio App. 412[, 1919 WL 181] (Hamilton County Ct.App.) aff'd, 100 Ohio St. 547, 127 N.E. 924 (1919). Furthermore, one Court has held the evidence must affirmatively and clearly show such to have been the agreement of the parties. *Hauenschild v. Standard Coffin Co.,* supra 10 Ohio Dec. at 536, 8 Ohio N.P. 124[, 1900 WL 1249].

*Holland,* 16 B.R. at 87–88. Consequently, it is the Trustee's burden to overcome this presumption and prove that the parties intended to extinguish Note 411 (and the security interest in the Airplane) when they executed Note 002.

 In an alternative attempt to restrict the scope of review to the documents themselves, the Trustee argues that the parol evidence rule prohibits all extrinsic evidence of intent. The parol evidence

rule renders extrinsic evidence inadmissible "to interpret, vary or add to the terms of an unambiguous written instrument." *Baker Perkins, Inc. v. Midland Moving and Storage Company*, 920 F.2d 1301, 1305 (6th Cir.1990). *See also, Ed Schory & Sons, Inc. v. Society National Bank*, 75 Ohio St.3d 433, 662 N.E.2d 1074, 1080 (1996); *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 455 (6th Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1429, 164 L.Ed.2d 132 (2006). But the central problem in this case is to determine what effect Note 002 was intended to have on Note 411, or, expressed more broadly, what purpose this transaction involving several disconnected and ill-suited documents was intended to implement. *See Galmish v. Cicchini*, 90 Ohio St.3d 22, 734 N.E.2d 782, 791 (2000) (evidence of circumstances surrounding contract formation allowed to show intent of contracting party). The documents are devoid of terms or provisions that address these issues, so clearly there can be no prohibited attempt to interpret, vary or add to them. Furthermore, as addressed more fully below, the documents are sufficiently ambiguous that the parol evidence rule cannot pertain. *Charles A. Burton, Inc. v. Durkee*, 158 Ohio St. 313, 109 N.E.2d 265, 271 (1952) (citing "well established rules" to the effect that parol evidence is admissible for the purpose of clarifying ambiguous contract language). Without extrinsic evidence, the intent of the parties remains a mystery.

Nevertheless, as discussed previously, our analysis must begin, but not necessarily end, with the commercial documents themselves. To say that the loan documentation relating to Note 002 is unartful is to be unduly kind. WSB obviously used preprinted form documents inapplicable to this commercial transaction and failed to clarify the relationship among the disparate documents or to articulate the purpose of the transaction by means of a loan agreement or otherwise.

Note 411 is written on a home equity line of credit form. It references no other documents, but cryptically notes that it is secured by: "Airplane Described As." The corresponding security agreement, the 411 Agreement, inaccurately refers to Note 411 as the "Universal Note," which is actually Note 445, but correctly states the execution date, principal amount, and term of Note 411. Perhaps more importantly, the 411 Agreement indicates that the collateral (the Airplane) is intended to secure not only the specific note, but "all extensions, renewals, refinancings, modifications and replacements of the debt, liability or obligation." This general language does not prove that Note 411 was renewed or refinanced by Note 002, but it does make it clear that, contrary to the Trustee's argument, the security agreement is not "note-specific" but would apply to any subsequent refinancing of the obligation or a replacement note.

Note 002 is likewise written on a home equity line of credit form. Note 002 and all other loan or security documents executed as part of the same transaction are devoid of any reference to an extension or renewal of Note 411 or any other prior obligation. However, Exhibit A to the note describes the security for the obligation, including a direct reference to the 411 Agreement:

REFERENCE: ORIGINAL SECURITY AGREEMENT ON CESSNA CITATION, DATED JULY 19, 2000, BY D & K AVIATION, INC. AND NEW COMMERCIAL SECURITY AGREEMENT DATED FEBRUARY 12, 2004

At a minimum, this reference to an ostensibly unrelated security agreement executed by a party not obligated on Note 002, creates an ambiguity as to the intent of the parties. Construed more favorably to

WSB, it suggests that Note 002 might be intended to incorporate or renew Note 411. The fact that D & K executed a new, but unperfected, security agreement on the Airplane that references Note 002 as well as the 411 Agreement, might reinforce this view, but it also adds another layer of ambiguity.

The Trustee argues that the significant differences between Note 411 and Note 002 make it preposterous to suppose that the latter is a renewal of the former. He points out that Note 002 is for a greater principal amount, at a higher interest rate, with a different obligor, and additional collateral. However, the Trustee has cited no authority to the effect that these differences preclude the possibility of a renewal or consolidation of loans. There certainly is a line of cases where these kind of differences between an original loan and a refinancing or consolidation has substantive effect. These cases are concerned with a determination of whether a loan refinancing transforms a purchase-money security interest into an avoidable nonpurchase-money security interest. *See, e.g., Matthews v. Transamerica Financial Services (In re Matthews)*, 724 F.2d 798 (9th Cir.1984); *In re Keeton*, 161 B.R. 410 (Bankr.S.D.Ohio). The analysis in these cases is heavily reliant upon statutory interpretation and is not concerned with whether the parties intended to extinguish the prior obligation. Even in the context of recharacterizing purchase-money security interests, however, some courts have held that changes in amount, interest rate, and collateral are not determinative. *See, e.g., In re Krueger*, 172 B.R. 572, 574–575 (Bankr.N.D.Ohio 1994) (additional ad-

vances and increased interest rate); *In re Georgia*, 22 B.R. 31 (Bankr.S.D.Ohio 1982) (altered terms, interest rate, and signatory); *In re Parsley*, 104 B.R. 72 (Bankr. S.D.Ind.1988) (cross-collateralization).

In our case, attempting to determine whether the parties intended a renewal or a novation, such factors are only slightly relevant as among the facts and circumstances to be considered in discerning intent. *See, In re Cantrill Construction Co.*, 418 F.2d 705, 707 (6th Cir.1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970) (raised interest rate insufficient to affect conclusion that parties intended renewal of loan). While it might seem at first blush that a change of obligor on a note is inconsistent with a renewal, it is not necessarily inconsistent with a renewal in the form of a loan consolidation which amalgamates several notes, guarantees and security interests into a single transaction.[6]

■ Moving from the language of the loan documents to the other evidence generated contemporaneously with the transaction, the manifestations of intent remain mixed. The Trustee understandably emphasizes the Settlement Statement and related bank records which appear to support his argument that Note 411 was paid and satisfied with the proceeds of Note 002. WSB, on the other hand, points to the deposition testimony of bank officers to the effect that Note 411 and the other notes were not actually paid off and no one intended that they be paid off in this transaction. In particular, WSB stresses that Note 411 was never cancelled or returned to D & K and remains in the possession of

---

**6.** The court uses the phrase "loan consolidation" loosely to mean a combination of several loans, guarantees, and security interests into a single, more manageable package without paying them off. *See, In re Box*, 324 B.R. 290, 296 (Bankr.S.D.Tex.2005). This is to be distinguished from the consolidation loan in which a new borrowing occurs to pay off several smaller loans and create a more manageable single loan. *See, In re Harrison*, 272 B.R. 857, 861 (Bankr.D.N.J.2001).

WSB. As noted previously, cancellation of a note is highly significant evidence of an intent to extinguish the corresponding obligation. *Peterson*, 661 F.2d at 292. Conversely, retention of a note rather than cancellation is some evidence of an intent not to extinguish the underlying obligation. *Gross v. Fizet*, 2001 WL 1667864, at *5 (Ohio Ct.App. Dec. 18, 2001); *In re Thayer*, 38 B.R. 412, 419 (Bankr.Vt.1984).

That WSB did not release its security interest in the Airplane as required by federal regulation upon satisfaction of the debt is further circumstantial evidence that WSB did not regard the debt as satisfied and believed it still had a valid security interest.[7] Also, it seems highly improbable that a lender in such a commercial transaction would actually intend to release a corporate obligor together with its most significant collateral in return for a couple of residential mortgages, an assignment of lease, and a lien on a motor home. While perhaps not probative in itself, this observation is certainly consistent with the Ohio presumption in favor of renewal. Should this court avoid WSB's security interest in the Airplane, WSB will likely be substantially prejudiced and the Trustee and the estate will receive an equally substantial windfall. This result, demonstrably at odds with the equities of the situation, demands clear proof that such was the intent of the parties. *See Rinn v. First Union National Bank of Maryland*, 176 B.R. 401, 415 (D.Md.1995).

It serves no purpose to delve further into the extrinsic evidence. The Trustee's case for summary judgment with respect to the novation issue depends upon the exclusion of any evidence beyond the language of the documents together with a restrictive reading of those documents. But the documents are ambiguous and in-

conclusive and, when viewed more favorably to the non-moving party, tend to suggest a loan consolidation rather than a novation. Because the intentions of the parties as to the effect of Note 002 on Note 411 are not manifest from the documents or from the limited stipulations, there remain genuine issues of material fact to be resolved at trial.

### Other Issues Raised by the Trustee

The remaining issues raised by the Trustee on summary judgment must also fail, primarily because they are dependent upon his prevailing on the novation issue. The Trustee seeks to avoid and recover certain postpetition transfers by D & K including the payments applied to Note 002 and the execution of the new security agreement, the 002 Agreement. But, the nature and propriety of those transfers will not be sufficiently established until a final determination is made as to the intended effect of Note 002. It remains unclear whether the obligation memorialized by Note 002 is prepetition or postpetition, secured or unsecured. The intended purpose of the 002 Agreement likewise remains unresolved. D & K, a non-signatory of Note 002, executed the 002 Agreement; the agreement was arguably unnecessary and redundant; and it was never properly perfected despite the obvious institutional knowledge of how to perfect security interests in aircraft. These unresolved fact issues are not only material, they are fundamental to understanding the purpose for which the transfers were made.

The Trustee also alleges that the actions of WSB violated the automatic stay imposed by 11 U.S.C. § 362. Again, this matter is premature and certainly not appropriate for summary judgment where

---

**7.** In addition, because the security interest remained of record, any intervening creditor would be on notice of the prior interest and, therefore, not be prejudiced.

the central issue in the case remains unresolved. It is quite possible that WSB may have violated the automatic stay. Construing the established facts favorably to the Trustee's position, it appears that WSB and the Webbs, willfully and without court approval or notice to anyone, may have attempted to extend WSB's security interest to otherwise unsecured debts of D & K, encumber estate property with personal debts of the Webbs, inappropriately pay postpetition interest on an undersecured debt, and make payments on the prepetition claim of WSB. These are serious allegations. But, in making its determination on a motion for summary judgment, this court is bound to view the underlying facts in a light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 586–88, 106 S.Ct. 1348. In this case, the facts pertaining to the Note 002 transaction are sufficiently obscure that the court, viewing the facts more favorably to WSB, is unable to discern exactly what was intended, whether such conduct was willful, and what damages would be appropriate.

Based upon the same facts, the Trustee has alleged that WSB's culpable conduct and bad faith warrant cancellation and/or subordination of its claims. But again, such culpability or bad faith cannot be ascertained without further evidence of what was intended and what actually transpired. Even the postpetition payments of D & K to WSB, while well-documented, may or may not have been made in the ordinary course of business depending upon the circumstances, including whether the payments were applied to a secured or unsecured claim. The loan documents together with the limited stipulated facts

before the court simply do not provide sufficient basis for a final determination by this court.

### CONCLUSION

For the foregoing reasons, the Trustee's Motion for Partial Summary Judgment is hereby denied.

**IT IS SO ORDERED.**